[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13715
_____

D.C. Docket No. 8:14-cv-00635-VMC-TBM


NEDZAD MILJKOVIC,

Plaintiff - Appellant,

versus

SHAFRITZ AND DINKIN, P.A.,
MITCHELL A. DINKIN.

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 30, 2015)

Before WILSON and ANDERSON, Circuit Judges, and VOORHEES,* District
Judge.

_____

  * Honorable Richard L. Voorhees, United States District Judge for the Western District of
North Carolina, sitting by designation.

WILSON, Circuit Judge:

Plaintiff-appellant Nedzad Miljkovic (Appellant) appeals from the district court's dismissal with prejudice of his complaint against defendants-appellees Shafritz and Dinkin, P.A. and Mitchell A. Dinkin (collectively, Appellees), debt-collection attorneys for non-party Publix Employees Federal Credit Union (Publix), for failure to state a claim under the Fair Debt Collection Practices Act (FDCPA), *see* 15 U.S.C. §§ 1692–1692p. On appeal, we are tasked with determining the extent to which the conduct-regulating provisions of the FDCPA apply to actions taken by debt-collector attorneys in collecting on a debt.

This matter has its roots in state court. After Appellant failed to repay an automobile loan, resulting in a final debt judgment in favor of Publix, Appellees sought and obtained a continuing writ of garnishment against Appellant's wages to recover the unpaid balance. In response, Appellant filed a claim of exemption from the garnishment; Appellees, in turn, filed a sworn reply disputing Appellant's right to an exemption. Shortly thereafter, but prior to a hearing on Appellant's exemption claim, the writ was dissolved on Appellees' motion.

Appellant then commenced this action in federal court, alleging that Appellees' sworn reply was an abusive, misleading, and unfair means of collecting on Appellant's debt and, as such, violated multiple provisions of the FDCPA. *See id.* §§ 1692d–1692f. Appellees moved to dismiss for failure to state a claim,

2

asserting the FDCPA was not intended to regulate representations made by debt-collecting attorneys in procedural court filings.  Appellees further argued that, because the sworn reply was directed to the state court and to Appellant's attorney, as opposed to Appellant, it was not an actionable communication under the FDCPA.  The district court agreed and dismissed Appellant's complaint on the grounds that the FDCPA did not apply to Appellees' conduct before the state court and, even if it did, Appellant had failed to state a claim under the Act.

This appeal followed, presenting us with an issue of first impression in the Eleventh Circuit: whether representations made by an attorney in court filings during the course of debt-collection litigation are actionable under the FDCPA.  Contrary to the district court's analysis, we find that the plain language of the FDCPA, other persuasive decisions interpreting that language, and the purpose underlying the Act mandate a finding that the FDCPA applies to attorneys, like Appellees, who regularly engage in debt collection activity, even when that activity includes litigation and even when the attorneys' conduct is directed at someone other than the consumer.[1]  Absent a statutory exception, then, documents filed in court in the course of judicial proceedings to collect on a debt, like Appellees'

---

[1] The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt."  *See* 15 U.S.C. § 1692a(3).  As such, courts often use "consumer" and "debtor" interchangeably.  Except, however, in the context of 15 U.S.C. § 1692c, which provides a broader, section-specific definition of "consumer."  *See id.* § 1692c(d) ("For the purpose of this section, the term 'consumer' includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator.").  Section 1692c is not at issue in this appeal.

sworn reply, are subject to the FDCPA.  However, because we agree with the district court's finding that Appellant failed to state a claim under the FDCPA, we affirm the dismissal of his complaint.

## I.

In December 2013, Appellees, on behalf of Publix, filed a motion in Florida state court seeking a continuing writ of garnishment against Appellant's wages in order to collect on a previously-obtained final debt judgment.  The writ was approved on or about January 2, 2014.  After the writ was served on Appellant's then-employer, twenty-five percent of Appellant's wages were withheld according to the terms of the writ.

Appellant filed a claim of exemption from garnishment, asserting that, because his wages were the primary source of income for his household, he qualified as a "head of family" under Florida law and his wages were thus exempt from garnishment.[2]  In a sworn affidavit, Appellant explained that his household included his wife and him; that his wife was disabled, unable to work, and received Social Security benefits; and that his wages, which typically did not exceed $750

---

[2] *See* Fla. Stat. § 222.11(1)(c) (defining the "head of family" as "any natural person who is providing more than one-half of the support for a child or other dependent").

4

per week, provided more than one-half of his wife's support.[3]  The affidavit did not state the amount of Appellant's wife's Social Security benefits.

Appellees filed a sworn reply in opposition to Appellant's claim of exemption, which stated, in pertinent part:

> 3.      On behalf of [Publix], the undersigned disputes that [Appellant] is a head of household/family within the meaning of Florida Statutes.
>
> 4.      The facts supporting [Appellant's] Claim of Exemption are in dispute and, therefore, this garnishment action should be set for trial to determine these factual issues and [Publix's] right to garnishment of the wages/salary at issue.

Appellees then issued discovery to Appellant.  In an initial, partial response to Appellees' discovery requests, Appellant provided three months of bank statements to demonstrate his household's income and monthly budget.

The parties discussed possible dates for the impending evidentiary hearing on Appellant's claim of exemption.  In the course of such conversations, Appellees offered to settle Appellant's debt for less than the amount due and owing in lieu of moving forward with the hearing, but Appellant refused.  An evidentiary hearing was scheduled for March 31, 2014.  Appellees reiterated their settlement offer to no avail, and discovery continued.

---

[3] *See id.* § 222.11(2)(a) (exempting from garnishment "[a]ll of the disposable earnings of a head of family whose disposable earnings are less than or equal to $750 a week"); *see also id.* § 77.041.

Appellant noticed the deposition of Appellee Mitchell A. Dinkin for March 10, 2014, for the stated purpose of questioning Mr. Dinkin regarding the factual basis for the sworn reply, which Mr. Dinkin had signed on behalf of Appellees. Appellant also returned his outstanding discovery responses to Appellees. Soon after receiving all of Appellant's discovery responses and accompanying documents, Appellees filed a motion to dissolve the writ of garnishment, and the writ was dissolved by court order on March 6, 2014.

Appellant then initiated the instant action against Appellees for violations of the FDCPA. The complaint alleged that, in filing the sworn reply, Appellees employed conduct the natural consequence of which was to harass, oppress, and abuse Appellant; used false, misleading, and deceptive means in connection with the collection of Appellant's debt; and engaged in unfair and unconscionable means to collect Appellant's debt. *See* 15 U.S.C. §§ 1692d–1692f. Appellant claimed that his sworn affidavit provided Appellees with "actual knowledge" of the fact that his wages were exempt from garnishment, and thus, Appellees had "no factual basis" for opposing Appellant's claim of exemption. The sworn reply, Appellant alleged, was a calculated effort to force a settlement of his debt.

Appellees moved to dismiss Appellant's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Appellees argued that Florida's garnishment statute *requires* debt-collecting plaintiffs to file a sworn written statement in opposition to

6

an individual's claim of exemption before an evidentiary hearing will be set. *See* Fla. Stat. § 77.041(3). The sworn reply, Appellees averred, was a mere procedural filing directed first to the state court and then to Appellant's counsel. Appellees asserted that the sworn reply was not the type of conduct from which Congress sought to protect consumers in enacting the FDCPA.

The district court agreed with Appellees. Skeptical of the idea that Congress intended to create FDCPA liability for "formulaic procedural filings," the district court concluded that, to the extent the sworn reply was a procedural filing rather than "a formal pleading making factual allegations," the FDCPA was inapplicable. The district court further determined that communications directed to someone other than the consumer are not actionable under the FDCPA. Thus, because the sworn reply was filed with and directed to the state court rather than to Appellant himself, the FDCPA did not apply to Appellees' conduct. Finally, the district court found that, even if the FDCPA applied, Appellant nonetheless failed to state a claim under the Act. Appellant's complaint was dismissed with prejudice, and this appeal followed.

## II.

We review de novo a district court's interpretation of a statute. *See Bankston v. Then*, 615 F.3d 1364, 1367 (11th Cir. 2010) (per curiam). We also review de novo the grant of a motion to dismiss under Rule 12(b)(6), "accepting

the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam).  However, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010).  To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face," meaning it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).

### III.

Our review is in two parts.  We must first determine whether the FDCPA applies where, as here, the representations alleged to have violated the Act were made in court filings in the course of debt-collection proceedings.  If the FDCPA does not apply to such representations, then the district court's dismissal could be affirmed without further discussion.  However, because we find that a debt-collector attorney's representations in court filings and his conduct toward a consumer's attorney are all covered by the FDCPA in the absence of any express exemption therefor, we must also decide whether the district court erred in

---

[4] Appellant attached multiple exhibits to his complaint, including a copy of his affidavit and of the sworn reply, and we treat those documents as part of the complaint for Rule 12(b)(6) purposes.  *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam); *see also* Fed. R. Civ. P. 10(c).

dismissing Appellant's complaint under Rule 12(b)(6).  Finding that Appellant has failed to state a claim under the FDCPA, we affirm on those grounds.

## A.

The threshold issue is the extent to which the FDCPA applies to the activities of debt-collector attorneys.  The district court concluded and Appellees argue on appeal that the FDCPA does not apply to representations made in "formulaic procedural filings" or to communications directed only to the consumer's attorney, rather than to the consumer himself.  We disagree.  The statutory text is entirely clear: the FDCPA applies to lawyers and law firms who regularly engage in debt-collection activity, even when that activity involves litigation, and categorically prohibits abusive conduct in the name of debt collection, even when the audience for such conduct is someone other than the consumer.  The plain language of the FDCPA is conclusive here, and so we must do no more than enforce the Act according to its terms.  *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 1030 (1989).  We therefore decline to read into the Act those exceptions urged by Appellees and find that Appellees' conduct before the state court is actionable under the FDCPA.

### 1.

The FDCPA regulates what debt collectors can do in collecting debts.  *See* 15 U.S.C. §§ 1692–1692p.  A "debt collector" includes "any person who . . .

9

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). As a lawyer and a law firm who regularly practice in the field of consumer debt collection, Appellees do not dispute that they qualify as "debt collectors" within the meaning of the Act. However, they do challenge the extent to which the FDCPA applies to the conduct of debt collectors engaged in litigation; specifically, Appellees aver that court filings that are "purely procedural" do not fall within the ambit of the Act. Appellees' argument is foreclosed by both Supreme Court precedent and the plain text of the FDCPA.

In *Heintz v. Jenkins*, the Supreme Court expressly held that the FDCPA "applies to the litigating activities of [debt-collector] lawyers." 514 U.S. 291, 294, 115 S. Ct. 1489, 1490 (1995). In *Heintz*, a bank's law firm brought a collections action against a consumer, Darlene Jenkins, to recover on an automobile loan. *Id.* at 293, 115 S. Ct. at 1490. A lawyer for the bank, George Heintz, sent Jenkins's lawyer a letter in an attempt to settle the suit. *Id.* Jenkins claimed the letter included a false statement of the amount she owed to the bank. *Id.* She sued Heintz and his law firm under the FDCPA. *Id.* The district court dismissed Jenkins's action for failure to state a claim on the grounds that the FDCPA did not apply to "lawyers engaging in litigation." *Id.* at 294, 115 S. Ct. at 1490. The

10

Seventh Circuit reversed, and the Supreme Court affirmed, holding that "[t]he Act does apply to lawyers engaged in litigation." *Id.*

The Supreme Court's holding aligned with the FDCPA's definition of "debt collector." *See id.* at 294, 115 S. Ct. at 1490–91 (citing 15 U.S.C. § 1692a(6)). "In ordinary English," the Court reasoned, "a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts." *See id.* at 294, 115 S. Ct. at 1491 (citing Black's Law Dictionary 263 (6th ed. 1990) ("To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings.")). A prior version of the FDCPA "contained an express exemption for lawyers," which stated that "the term 'debt collector' did not include 'any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client.'" *Id.* (quoting Pub. L. No. 95-109, § 803(6)(F), 91 Stat. 874, 875 (1977)). However, Congress later "repealed this exemption in its entirety, without creating a narrower, litigation-related, exemption to fill the void"—a choice the Court found significant. *Id.* at 294–95, 115 S. Ct. at 1491 (citation omitted). Taking stock of Congress's action, the Court theorized that Congress must have "intended that lawyers be subject to the Act whenever they meet the general 'debt collector' definition." *Id.* at 295, 115 S. Ct. at 1491.

11

Heintz asked the Court to *imply* an "exemption for those debt-collecting activities of lawyers that consist of litigating," but the Court would not oblige. *Id.* For one thing, the Court did not view its holding as limiting an attorney's ability to advance the interests of his client. *See id.* at 296–98, 115 S. Ct. at 1491–92; *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 600, 130 S. Ct. 1605, 1622 (2010) ("An attorney's ethical duty to advance the interests of his client is limited by an equally solemn duty to comply with the law and standards of professional conduct." (internal quotation marks omitted)). It pointed to a number of exceptions in the text of the FDCPA "authoriz[ing] the actual invocation of the remedy that the collector 'intends to invoke'" in accord with the Act's "apparent objective of preserving creditors' judicial remedies." *Heintz*, 514 U.S. at 296, 115 S. Ct. at 1492. For another thing, the Court found "nothing either in the Act or elsewhere indicating that Congress intended . . . to create [such an] exception from the Act's coverage—an exception that . . . falls outside the range of reasonable interpretations of the Act's express language." *Id.* at 298, 115 S. Ct. at 1492–93. Under *Heintz*, then, the FDCPA unquestionably applies to the litigating activities of lawyers who regularly engage in debt collection—and to Appellees' conduct before the state court. *See id.* at 299, 115 S. Ct. at 1493.

A post-*Heintz* amendment to the FDCPA further confirms that the Act applies here. *See Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 231 (4th Cir.

2007).  After *Heintz* was handed down, Congress amended 15 U.S.C. § 1692e(11) of the Act, which prohibits initial written communications to the consumer that fail to disclose that they are from a debt collector, to exclude formal pleadings "made in connection with a legal action" from the requirements of *that* subsection.  § 1692e(11); *see Sayyed*, 485 F.3d at 231.  In so doing, Congress expressly exempted formal pleadings—and formal pleadings alone—from a "sole, particularized requirement of the FDCPA."  *Sayyed*, 485 F.3d at 231.  After Congress's amendment, debt-collector attorneys who file a complaint or respond to a complaint need not state that such pleadings are filed by a debt collector.[5]  *See* § 1692e(11).  Congress did not otherwise constrain the Act's general applicability to lawyers using litigation to collect debts.

We presume that, in amending a statute, Congress has knowledge of prior judicial interpretation of the statute.  *See Lorillard v. Pons*, 434 U.S. 575, 580–81, 98 S. Ct. 866, 870 (1978).  That Congress exempted formal pleadings from a single requirement of the FDCPA *after* the Supreme Court issued its decision in *Heintz* suggests that Congress was aware of the Court having interpreted the Act to apply to the litigating activities of debt-collector attorneys "*and accepted it*," except to the extent that it exempted formal pleadings from § 1692e(11)'s requirements.  *See*

---

[5] *See* Black's Law Dictionary 1339 (10th ed. 2014) (defining a "pleading" as "[a] formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses," such as "the plaintiff's complaint and the defendant's answer").

13

*Sayyed*, 485 F.3d at 231 (emphasis added).  If Congress had intended to exempt all litigating activities or any one litigating activity from the Act's other provisions, "it presumably would have done so expressly," as it did in § 1692e(11).  *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 300 (1983).  Instead, Congress has effectively instructed that *all* litigating activities of debt-collecting attorneys are subject to the FDCPA, except to the limited extent formal pleadings are exempt under § 1692e(11).[6]  *See Sayyed*, 485 F.3d at 231.

Here, an implied exemption from the FDCPA's coverage for Appellees' sworn reply would "fall[] outside the range of reasonable interpretations of the Act's express language."  *See Heintz*, 514 U.S. at 298, 115 S. Ct. at 1492–93; *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1187 (11th Cir. 1997) ("Courts have no authority to alter statutory language.").  Both the clear language chosen by Congress and the Supreme Court's explicit pronouncement in *Heintz* compel the conclusion that the FDCPA applies to all litigating activities of debt-collecting attorneys, subject only to § 1692e(11)'s express exemption.  *See Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17, 100 S. Ct. 1905, 1910 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition,

---

[6] We need not determine whether the sworn reply filed by Appellees is, in fact, a "procedural filing" or whether a "procedural filing" would or could never qualify as a "formal pleading" under § 1692e(11) because the instant appeal does not implicate the particular requirements of that subsection.  For our purposes, § 1692e(11) simply demonstrates that Congress *can* craft explicit exemptions from the FDCPA's proscriptions for the litigating activities of debt-collecting attorneys where it sees fit to do so.  *See, e.g.*, *United States v. Mount Sinai Med. Ctr. of Fla., Inc.*, 486 F.3d 1248, 1252 (11th Cir. 2007).

14

additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."); *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1228 (11th Cir. 2001) ("Those who ask courts to give effect to perceived legislative intent by interpreting statutory language contrary to its plain and unambiguous meaning are in effect asking courts to alter that language . . . ."). The Act thus encompasses actions undertaken by Appellees, both in and out of state court, in collecting on Appellant's debt.

**2.**

Appellees try to extricate the sworn reply from the FDCPA's proscriptions by arguing that the sworn reply was directed to Appellant's attorney, not to Appellant, and communications directed to a consumer's attorney, rather than to the consumer, are not actionable under the Act.[7] They reason that the FDCPA should not apply to a debt collector's conduct when an attorney is interposed between the consumer and the debt collector because, in those instances, the

---

[7] Appellees also argue, for the first time on appeal, that the sworn reply does not qualify as a "communication" under the FDCPA. *See* 15 U.S.C. § 1692a(2) (defining the term "communication"). We need not exercise our discretion to consider this issue because it is unconnected to our ultimate determination. *See Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.*, 677 F.3d 1286, 1292 (11th Cir. 2012) (providing this court has discretion to consider issues not presented below). First, Appellant did not allege below and does not allege on appeal that the sworn reply constitutes a "communication" under the FDCPA; Appellant's claims are based on Appellees' "conduct." Second, communications in connection with debt collection are governed by § 1692c, a provision that is not at issue here. Third, the provisions that are at issue, §§1692d–1692f, regulate more than a debt collector's communications; they prohibit specified conduct, representations, and means of collection. While these sections necessarily encompass communications, a violation thereof may be premised on conduct not falling within the statutory definition of "communication." *See* §§ 1692a(2), 1692d–1692f. Appellees' red herring is a rough fish.

15

attorney, rather than the FDCPA, will protect the consumer from the debt collector's conduct.  It should be clear from the statutory text and from *Heintz* that Appellees' argument is ill-fated.  Still, given the varied holdings of our Sister Circuits on this issue, we think it necessary to address Appellees' argument.  In so doing, we find it impossible to conclude, under the plain language of the FDCPA, that a debt collector's communications to an attorney representing a consumer are not covered by the Act.

Our inquiry begins with the specific provisions invoked by Appellant.  The first is § 1692d, which expressly provides that "debt collector[s] may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse *any person* in connection with the collection of a debt."  15 U.S.C. § 1692d (emphasis added).  Given the phrase "any person," § 1692d's universal application could not be clearer.  *See Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773 (7th Cir. 2007) (emphasizing § 1692d's reference to "any person").  On its face, § 1692d is not a protection for consumers alone; it ostensibly protects *any person* from being harassed, oppressed, or abused by a debt collector in connection with the collection of a debt.  In the absence of any language to the contrary, a consumer's attorney is undoubtedly "any person."  *Cf.* 15 U.S.C. § 1692c, (d) (restricting application of section to consumers and "the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator").

16

The same holds true for § 1692e.  Section 1692e broadly prohibits "*any* false, deceptive, or misleading representation or means *in connection with the collection of any debt*."  *Id.* § 1692e (emphasis added).  A particular class of persons to whom such representations or means cannot be directed is not specified; rather, in listing examples of conduct that would violate § 1692e, Congress explicitly provided examples of conduct directed to consumers and other persons alike.  A debt collector may violate § 1692e by threatening "to take any action that cannot legally be taken," using "any false representation or deceptive means . . . to obtain information concerning a consumer," or by failing to disclose in an initial written communication "with the consumer" that the communication is from a debt collector.  *See id.* § 1692e(5), (10), (11).  As such, § 1692e is naturally read to bar "any" prohibited representation, regardless of to whom it is directed, *so long as* it is made "in connection with the collection of any debt."  *See id.* § 1692e.

Like § 1692e, the third section at issue, § 1692f, does not expressly state that it protects "any person."  Section 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f.  Still, the provision's broad language coupled with its illustrative examples of violative conduct support the conclusion that § 1692f applies whether the unfair and unconscionable means are employed against consumers or non-consumers.  Section 1692f(5), for example, bars debt collectors from "[c]ausing

17

charges to be made to *any person* for communications by concealment of the true purpose of the communication." *Id.* § 1692f(5) (emphasis added). In this scenario, it is the person who accepts the charges as a result of the debt collector's concealment who is also afforded protection under § 1692f, and nothing in the language of the statute suggests that that person need be the consumer. *Cf. id.* § 1692c.

In sum, not one of the three sections at issue here "designate[s] any class of persons, such as lawyers, who can be abused, misled, etc., by debt collectors with impunity." *See Evory*, 505 F.3d at 773. The FDCPA's statutory text does not provide nor does it imply immunity for debt collection practices otherwise forbidden by the Act simply because those debt collection practices are directed at a consumer's attorney or any other non-consumer. Appellees' contention that attorneys representing consumers are excluded from the class of persons to whom a debt collector may not direct conduct prohibited under §§ 1692d–1692f finds no support in the plain language of the Act.

To the contrary, § 1692c specifically provides that, where a debt collector knows that a consumer is represented by an attorney, he or she shall direct all communications to the consumer's attorney, absent permission to communicate directly with the consumer. *See* 15 U.S.C. § 1692c(a)(2). Section 1692c, as a whole, regulates debt collectors' communications with consumers. *See id.* §

18

1692c; *see also id.* § 1692b(2).  In contrast to other provisions, § 1692c explicitly refers to the "consumer" and clearly and necessarily distinguishes "consumers" from "attorneys" and other third parties.  It is thus understood to protect only consumers and those individuals enumerated in §1692c(d).  *See Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649 & n.1 (6th Cir. 1994) (en banc) (noting that § 1692c is the only provision limited to "consumers," while "a debt collection practice need not offend the alleged debtor before there is a violation of [§ 1692e]").  Section 1692c's singular focus does not, however, evidence a congressional intent to afford attorneys and their consumer-clients disparate protection under *other* sections of the Act.  *See, e.g.*, *Russello*, 464 U.S. at 23, 104 S. Ct. at 300 ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)).

Indeed, the FDCPA's liability provision is in no way limited to conduct and communications directed only to consumers.  Pursuant to § 1692k(a), "any debt collector who fails to comply with any provision of this subchapter *with respect to any person* is liable to such person."  15 U.S.C. § 1692k(a) (emphasis added).  The phrase "with respect to any person" is expansive and is properly understood to encompass all persons.  *See CBS Inc.*, 245 F.3d at 1223 ("[I]n the absence of any

19

language limiting the breadth of [the] word ['any'], it must be read as referring to all of the subject that it is describing." (internal quotation marks omitted)).  It follows that if "any person" is entitled to redress under the FDCPA, then all persons must be entitled to protection under it—be it the consumer under § 1692c, *see Wright*, 22 F.3d at 649 n.1, or any person who is mistreated in the connection with the collection of any debt under §§ 1692d–1692f.  *See United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999) ("[W]e read the statute to give full effect to each of its provisions. . . . [and] look to the entire statutory context.").  By painting § 1692k with broad strokes, Congress ensured that debt collectors could be held liable to consumers and non-consumers alike for violations of the Act's conduct-regulating provisions.  We refuse to read §1692k to be narrower than the plain meaning of the phrase "any person" implies.  *See, e.g.*, *United States v. Silva*, 443 F.3d 795, 798 (11th Cir. 2006) (per curiam) (outlining rules of statutory construction).

Finally, if the statutory text left any room for doubt on the consumer-attorney-communication issue, appellate precedent resolves it.  Our lodestar, *Heintz*, involved a communication from a debt-collector attorney to a consumer's attorney.  Jenkins's FDCPA claims in *Heintz* were based on a letter from Heintz, the debt collector, to *Jenkins's attorney*.  *See* 514 U.S. at 293, 115 S. Ct. at 1490.  On these facts, the Supreme Court held that the Act applies to lawyers "who

20

'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Id.* at 299, 115 S. Ct. at 1493. In so doing, the Court assumed, without deciding, that a false representation sent to a debtor's attorney by a debt collector violates the Act. *See id.* at 298–99, 115 S. Ct. at 1492–93. In accord with *Heintz*, a number of courts of appeals have since read §§ 1692d–1692f, or a combination thereof, as applying to a debt collector's communications with persons other than the consumer, *see, e.g.*, *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 818–19 (8th Cir. 2012); *Todd v. Collecto, Inc.*, 731 F.3d 734, 737–39 (7th Cir. 2013); *Evory*, 505 F.3d at 773; *see also Sayyed*, 485 F.3d at 232–34, and we join with those courts today.

The language of the FDCPA is plain and clear. Debt collectors are categorically prohibited from making false or misleading representations and from engaging in abusive and unfair practices in connection with the collection of any debt. *See* 15 U.S.C. §§ 1692d–1692f. A proper reading of the statutory text dictates that a debt collector's communications with a consumer's attorney, including those communications required by § 1692c, are subject to §§ 1692d–1692f of the Act to the same extent as a debt collector's communications with the consumer himself.[8] *See, e.g.*, *id.* § 1692k(a). It would create an odd situation,

---

[8] Appellees also suggest that the sworn reply is not actionable under the FDCPA because it was "directed to the state court." This contention fails for the same reasons Appellees' argument regarding attorney-to-attorney communications fails: (1) the Act's prohibitions are not

21

indeed, if the fact that a consumer was represented by an attorney somehow excused the debt collector from otherwise observing the FDCPA's requirements. Therefore, in the absence of statutory language to the contrary, we decline Appellees' invitation to exempt conduct or communications directed to a consumer's attorney from the Act's coverage.

**3.**

Upon a brief examination of the Act's declared purpose, we are fortified in our conclusions. The FDCPA was passed in response to "abundant evidence of . . . abusive, deceptive, and unfair debt collection practices by many debt collectors"; then-existing laws and procedures for redressing injuries caused by such practices had proven inadequate to protect consumers. *See* 15 U.S.C. § 1692(a)–(b). Its purpose is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State

---

limited to representations made directly to or conduct directed solely at consumers, *see* §§ 1692d–1692f, and (2) documents submitted to a court in the course of judicial proceedings to collect on a debt fall within the ambit of "litigating activities," *see Heintz*, 514 U.S. at 294, 115 S. Ct. at 1490. Also, because debts are often collected through the judicial process, *see id.* at 294, 115 S. Ct. at 1491 (citing Black's Law Dictionary 263 (6th ed. 1990) ("To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings.")); *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 949 (7th Cir. 2011) (Tinder, J., concurring in the result) (citing § 1692a(2)) (noting that courts are a medium through which debt collection information is conveyed to consumers), we think it would "compel absurd results" indeed if abusive, misleading, or unconscionable documents submitted to a court (and served on the consumer or his counsel) in an attempt to collect on any debt were excluded from the Act's proscriptions, *see Jerman*, 559 U.S. at 600, 130 S. Ct. at 1622. Appellees cannot avoid the FDCPA by arguing that the sworn reply was primarily directed to the state court.

22

action to protect consumers against debt collection abuses." *Id.* § 1692(e). Congress found that non-abusive means "[were] available for the effective collection of debts." *Id.* § 1692(c).

"[T]he import of the words Congress has used is clear." *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (en banc). The Act's natural point of aim is the debt-collecting activities of debt collectors, and the inbuilt consequence of its regulation of debt collectors is the protection of both consumers *and* other persons who find themselves on the receiving end of prohibited debt-collecting activities. *See, e.g.*, §§ 1692(b), 1692(e), 1692a(2), 1692d–1692f, 1692k(a). Interpreting the FDCPA to permit otherwise prohibited conduct merely because it is directed at a consumer's attorney or takes the form of a procedural filing would not only subvert the plain text of the Act, it would also frustrate the Act's stated objectives. *See, e.g.*, *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542, 60 S. Ct. 1059, 1063 (1940) ("In the interpretation of statutes, the function of the courts is . . . . to construe the language so as to give effect to the intent of Congress."); *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783, 72 S. Ct. 1011, 1014–15 (1952) ("[A statute] should be interpreted so as to effect its purpose.").

In the context of communications to a consumer's attorney, for example, Appellees' reading of the FDCPA protects a consumer from otherwise prohibited debt collection efforts "only so long as she does not retain an attorney." *Guerrero*

*v. RJM Acquisitions LLC*, 499 F.3d 926, 945 (9th Cir. 2007) (per curiam) (Fletcher, J., concurring in part, dissenting in part).  Once the consumer retains an attorney, though, the debt collector is free to convey false or misleading information to the consumer's attorney without fear of consequences.  *See, e.g.*, § 1692e.  In other words, in seeking the advice of an attorney, the consumer opens himself up to the very abuses the Act is meant to redress, *see Guerrero*, 499 F.3d at 945 (Fletcher, J., concurring in part, dissenting in part); *see also* § 1692(a) (listing effect of abusive debt collection practices), because the consumer, rather than the debt collector, will be forced to bear the costs resulting from the debt collector's conduct, *cf.* § 1692k(a) (holding debt collectors civilly liable for illicit debt collection practices).  Such a result would destroy, not achieve, the spirit and force of the FDCPA.  *See DBB, Inc.*, 180 F.3d at 1283.

### 4.

Guided by Supreme Court precedent and the plain language of the FDCPA, we find that the Act applies to the litigating activities of lawyers and law firms engaged in consumer debt collection, subject only to the limited exceptions Congress has chosen to include in the statute.  *See Harris*, 216 F.3d at 976 ("We will not do to the statutory language what Congress did not do with it . . . .").  The statutory text also leads us to conclude that the Act prohibits debt collectors from engaging in proscribed conduct with respect to any person in connection with the

24

collection of any debt, *see* 15 U.S.C. §§ 1692d–1692f, 1692k, except where Congress has expressly limited applicability of the Act to a particular person or group of persons, *see, e.g.*, *id.* §§ 1692b, 1692c.

To the extent our reading of the FDCPA "imposes some constraints on a lawyer's advocacy on behalf of [his] client, it is hardly unique in our law," and we do not think it absurd to require a debt-collecting attorney advancing the interests of his client to fulfill his "equally solemn duty to comply with the law." *Jerman*, 559 U.S. at 600, 130 S. Ct. at 1622. The FDCPA is nothing short of a straightforward statutory directive to hold debt collectors accountable for abusive, deceptive, and unfair debt collection practices. Had Congress intended to restrict application of the FDCPA to conduct directed only to the consumer or to exempt certain procedural filings from its provisos, it presumably would have done so expressly, *see, e.g.*, §§ 1692c(d), 1692e(11), but it did not draft the statute that way. Therefore, because Appellees filed the sworn reply in connection with the collection of Appellant's debt, Appellees' conduct is actionable under the FDCPA.

## B.

Having determined that the FDCPA does apply to Appellees' conduct here, we must examine whether Appellant pled facts sufficient to allow this court "to draw the reasonable inference that [Appellees are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. In a single cause of action,

Appellant alleges that Appellees violated each of § 1692d, § 1692e, and § 1692f by filing the sworn reply, notwithstanding Appellant's assertions that his wages were exempt, and in not releasing the writ of garnishment sooner.  However, on this issue, we agree with the district court and find that Appellant's complaint fails to sufficiently allege that Appellees engaged in conduct prohibited by the FDCPA.

### 1.    § 1692d

Section 1692d does not, as a matter of law, proscribe Appellees' conduct in this case.  Under § 1692d, a debt collector "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Banned conduct includes the "use of violence," the "use of obscene or profane language," and repeated phone calls intended to annoy or harass "any person at the called number."  *See, e.g.*, *id.* § 1692d(1)–(6) (listing types of prohibited conduct).  We view claims under § 1692d "from the perspective of a consumer whose circumstances make[] him relatively more susceptible to harassment, oppression, or abuse."  *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985).  Here, Appellant alleges that Appellees violated § 1692d by filing the sworn reply despite Appellant's affidavit stating his wages were exempt from garnishment.

We considered the scope of § 1692d in *Jeter*.  In that case, Credit Bureau, Inc. (Credit Bureau) notified the consumer, Diane Jeter, that she was "indebted to"

26

Credit Bureau's client. *Id.* at 1171. The letter provided that, "unless satisfactory arrangements [we]re made" within a five-day period, Credit Bureau would recommend that its client bring an action against Jeter to collect the debt. *Id.* We acknowledged that, while a threatened "lawsuit might cause a consumer embarrassment, inconvenience, and further expense . . . . [s]uch consequences of a debt collection (or any other) lawsuit are so commonplace that even a consumer susceptible to harassment, oppression, or abuse would not have been harassed, oppressed, or abused by the statement *in and of itself.*" *Id.* at 1179 (internal quotation marks omitted). We noted that, while Credit Bureau's written statements may have fallen within § 1692e as "potentially deceptive or false . . . threats to recommend legal action," *id.* (citing § 1692e(5), (10)), "[d]eception or falsehood alone . . . is wholly different from the conduct condemned in [§ 1692d]," *id.* As such, we found that Credit Bureau's conduct was outside the scope of § 1692d— and we reach the same conclusion here.

If the filing of a lawsuit does not have the natural consequence of harassing, abusing, or oppressing a debtor, surely a simple oppositional statement does not "represent[] the type of coercion and delving into the personal lives of debtors that the FDCPA in general, and § 1692d in particular, was designed to address." *Id.* at 1180 n.12; *see Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006) ("[T]he filing of a debt-collection lawsuit without the immediate means of

27

proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor."). It is not enough that the sworn reply caused Appellant unwanted "embarrassment, inconvenience, and further expense," *Jeter*, 760 F.2d at 1179 (internal quotation marks omitted); indeed, as the Sixth Circuit has noted, "[a]ny attempt to collect a defaulted debt will be unwanted by a debtor," *see Harvey*, 453 F.3d at 330. Rather, the debt collector's conduct must manifest "a tone of intimidation," *Jeter*, 760 F.2d at 1179 (internal quotation marks omitted), and no such tone emanates from Appellees' sworn reply here.

Even viewed from the perspective of the least sophisticated consumer, the filing of the sworn reply does not have the natural consequence of harassing, abusing, or oppressing Appellant. *See Jeter*, 760 F.2d at 1179; *see also Chalik v. Westport Recovery Corp.*, 677 F. Supp. 2d 1322, 1330 (S.D. Fla. 2009) (finding sworn statement denying exemption filed without specific knowledge regarding exemption was not the type of conduct covered by § 1692d); *Watkins v. Peterson Enters.*, 57 F. Supp. 2d 1102, 1108–09 (E.D. Wash. 1999) (holding that serving writs of garnishment that overstated debt was not an abusive practice because the types of behavior described in § 1692d "are a far cry from that at issue"). In employing the court system in the way alleged by Appellant here—namely, filing an oppositional statement—Appellees did not engage in "conduct the natural consequence of which [was] to harass, oppress, or abuse" within the meaning of §

28

1692d.  *See, e.g.*, § 1692d(1)–(6).  Therefore, the district court did not err in dismissing Appellant's claim under § 1692d.[9]

## 2.    § 1692e

Appellant has also failed to allege facts sufficient to state a claim under § 1692e(10) or, more generally, § 1692e.  Section 1692e generally prohibits deceptive practices in debt collection.  Examples of proscribed conduct include implying that the consumer committed any crime, falsely representing the amount of the debt, and threatening to take legal action that is not intended to be taken. *See* 15 U.S.C. § 1692e(1)–(16).  Appellant contends that the sworn reply qualifies as a "false representation or deceptive means" of collecting a debt under subsection (10) because Appellees were without a factual basis for opposing his claim of exemption.  In determining whether Appellees' conduct was deceptive under § 1692e and/or § 1692e(10), we must consider whether the "least sophisticated consumer" would be deceived by the sworn reply.[10]  *See Jeter*, 760 F.2d at 1177.

---

[9] *See Jeter*, 760 F.2d at 1179 (citing S. Rep. No. 95-832, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698) ("Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury.  Nevertheless, Congress has indicated its desire for the courts to structure the confines of § 1692d.").

[10] While we have determined that the FDCPA applies to debt-collection activities directed to a consumer's attorney, the standard by which such claims should be evaluated is a different question.  Appellees reasonably suggest that the "least sophisticated consumer" standard is inappropriate for evaluating the tendency of conduct or language to deceive or mislead a consumer's attorney.  The Seventh Circuit, among others, has adopted a "competent lawyer" standard to determine whether a communication or representation to a consumer's attorney would deceive or mislead that attorney under § 1692e.  *See Evory*, 505 F.3d at 774–75; *see also Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 574 (8th Cir. 2015).  We do not

29

The sworn reply is not misleading or deceptive in the traditional sense. It does not misrepresent the nature or effect of the writ of garnishment. *See Fuller v. Becker & Poliakoff, P.A.*, 192 F. Supp. 2d 1361, 1369–70 (M.D. Fla. 2002). It does not erroneously state the amount of the debt owed by Appellant. *See Kojetin v. C U Recovery, Inc.*, 212 F.3d 1318, 1318 (8th Cir. 2000) (per curiam). It does not incorrectly identify the holder of the alleged debt. *See Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 327–28 (6th Cir. 2012). It does not contain "false or deliberately ambiguous threats" of future litigation. *See Jeter*, 760 F.2d at 1177–78 & n.11; *see also Crossley v. Lieberman*, 868 F.2d 566, 567, 571–72 (3d Cir. 1989). Instead, the sworn reply simply states Appellees' legal position relative to Appellant's claim of exemption.

Still, Appellant maintains that Appellees' legal position was baseless because Appellees received Appellant's affidavit in support of his claim of exemption prior to filing the sworn reply. Appellees, however, were under no obligation to take Appellant's affidavit as the truest representation of his financial situation. Indeed, Appellant's affidavit failed to provide the amount of his wife's Social Security benefits. Appellees needed to ascertain the amount of Appellant's wife's Social Security benefits in order to determine whether Appellant provided

---

adopt or reject such a standard here because, if Appellant cannot make the minimal showing under *Jeter*, he is necessarily unable to demonstrate that individuals held to a higher standard of competence, be it an attorney or a state court judge, could be misled or deceived by the sworn reply.

more than one-half of her support. *See* Fla. Stat. § 222.11. Appellees sought that information through discovery, and, in order to avoid dissolution of the writ of garnishment before such discovery took place, Appellees had to file the sworn reply. *See id.* § 77.041(3) ("If the plaintiff or the plaintiff's attorney does not file a sworn written statement that answers the defendant's claim of exemption . . . no hearing is required and the clerk must automatically dissolve the writ and notify the parties of the dissolution by mail."). In short, at the time the sworn reply was filed, the facts underlying Appellant's right to an exemption *were* in dispute.

Appellant does not allege how he—or anyone else—was "misled, deceived, or otherwise duped" by the submission of a sworn statement that disputed his contention that he was a "head of family" under Florida law. *See Hemmingsen*, 674 F.3d at 819 (internal quotation marks omitted). Appellees were fully within their rights to assert their position with regard to Appellant's claim of exemption and to request more information or details about Appellant's right to an exemption. It is not enough to allege that Appellant believed that he was entitled to the "head of family" exemption and that Appellees inconveniently and disappointingly disagreed. It would be passing odd to find that allegations that a state court filing asserted a legal position contrary to that of the consumer were sufficient to state a claim under § 1692e. *See Jerman*, 559 U.S. at 599–600, 130 S. Ct. at 1621–22 (noting "the Act's conduct-regulating provisions . . . should not be assumed to

31

compel absurd results when applied to debt collecting attorneys"). Without more, we will not limit a debt-collector attorney's ability to engage in conduct inherent to the adversarial process—and expected in a garnishment action in Florida state court. *See Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (per curiam) ("[T]he complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'").

Appellees' subsequent dissolution of the writ of garnishment does not affect our analysis. An "apparent objective" of the FDCPA is the preservation of creditors' judicial remedies. *See Heintz*, 514 U.S. at 296, 115 S. Ct. at 1492. If judicial proceedings are to accurately resolve disputes, including debt collection disputes, debt-collector attorneys must be permitted to present legal arguments in their clients' favor and to invoke the remedies available to them, including wage garnishment. *See id.* (citing § 1692c(2)–(3)) ("[The Act allows] the actual invocation of the remedy that the collector 'intends to invoke.'"). The fact that Appellees' attempt to collect on Appellant's debt by garnishing his wages "turn[ed] out ultimately to be unsuccessful" does not make the filing of the sworn reply "an action that cannot legally be taken." *See id.* at 296, 115 S. Ct. at 1491 (internal quotation marks omitted).

32

Because Appellant's allegations as stated in his complaint are insufficient to establish deceptive means of collecting a debt under § 1692e or § 1692e(10), Appellant fails to state a cause of action, and his claim was properly dismissed.[11]

## 3.    § 1692f

Finally, § 1692f's catch-all prohibition on unfair and unconscionable conduct does not net Appellant's complaint.  *See Todd*, 731 F.3d at 739 (labeling § 1692f a "catch-all prohibition").  Section 1692f generally prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  Whether conduct qualifies as unfair or unconscionable is assessed objectively from the point of view of the "least sophisticated consumer."[12] *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200–01 (11th Cir. 2010) (per curiam) (internal quotation marks omitted).

The Act does not supply definitions for "unfair" or "unconscionable," so we turn to the common usage of the words to determine their meaning.  *See Consol. Bank, N.A. v. United States Dep't of Treasury*, 118 F.3d 1461, 1464 (11th Cir. 1997).  "Unfair" is defined as "marked by injustice, partiality, or deception."

---

[11] Generally, "whether the 'least sophisticated consumer' would construe [the conduct] as deceptive is a question for the jury."  *Jeter*, 760 F.2d at 1178.  However, whether Appellant alleged facts sufficient to state a claim under § 1692e(10) is a legal question for the court.  *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Facial challenges to the legal sufficiency of a claim or defense . . . . always present[] a purely legal question . . . .").

[12] As suggested above, whether an attorney would find Appellees' conduct unfair or unconscionable is a question different from whether the least sophisticated consumer would find Appellees' conduct unfair or unconscionable.  *See supra note* 10.  However, given the circumstances of this case, we need not traverse that quagmire today.

33

Merriam Webster's Collegiate Dictionary 1290 (10th ed. 1996); *see also LeBlanc*, 601 F.3d at 1200 ("[I]n *Jeter*, we noted in dictum that in the FTC context, 'an act or practice is deceptive or unfair if it has the tendency or capacity to deceive.'").  A step beyond unfair, "unconscionable" is defined as "shockingly unfair or unjust." Merriam Webster's Collegiate Dictionary 1286; *see* Black's Law Dictionary 1757 (10th ed. 2014) ("having no conscience; unscrupulous . . . showing no regard for conscience; affronting the sense of justice, decency, or reasonableness").  As defined, neither of these terms describes Appellees' conduct here.

We first note that Appellant fails to allege any conduct beyond that which he asserts violates the other provisions of the FDCPA, and, in doing so, Appellant fails to specifically identify how Appellees' conduct here was either unfair or unconscionable *in addition to* being abusive, deceptive, or misleading.[13]  *See LeBlanc*, 601 F.3d at 1200 & n.31 (finding consumer's § 1692f claim dependent in part on consumer's success under § 1692e(5) because "it's doubtful" conduct not found to violate § 1692e(5) could be perceived as unfair and unconscionable).  A catch-all is not a free-for-all.  In order to proceed under § 1692f, Appellant is still required to allege facts showing that the least sophisticated consumer would or

---

[13] Appellant's allegation that Appellees filed the sworn reply in a bad faith attempt to leverage a settlement of the subject debt is a legal conclusion, which we are not required to treat as true. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

34

could view Appellee's sworn reply as partial and unjust or as unscrupulous and unethical. *See id.* at 1200. Appellant makes no such allegations.

Looking to the conduct that *is* alleged, we fail to see how the sworn statement, which was filed after Appellees had obtained a writ of garnishment and for purposes of persuading the state court to hold an evidentiary hearing on Appellant's exemption claim, was either deceitful or an affront to justice. *See Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 472–75 (7th Cir. 2007) (holding law firm did not violate § 1692f when efforts to collect on debt judgment resulted in three-week freeze of consumer's checking account); *Todd*, 731 F.3d at 739–40 (finding plaintiff failed to state claim under § 1692f where debt collector made no request for payment and no express or implied threat of repercussion to plaintiff or his consumer-mother); *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 756, 763–65 (7th Cir. 2006) (concluding least sophisticated consumer could find letter with heading "YOU ARE EITHER HONEST OR DISHONEST YOU CANNOT BE BOTH" unfair under § 1692f); *see also Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1517 (9th Cir. 1994) (holding pursuit of writ of garnishment where debtor was current on credit card payments could be found to violate § 1692f). Appellees' conduct, as alleged, is a "far cry" from the types of behavior proscribed by § 1692f. *See Watkins*, 57 F. Supp. 2d at 1109; *see also* 15 U.S.C. § 1692f(1)–(8).

35

The crux of Appellant's § 1692f claim is Appellees' assertion in the sworn reply of a legal position contrary to that of Appellant.  Unfortunately, disagreement is the nature of litigation; Appellees' conduct before the state court does not, without more, rise to the level of unfair or unconscionable under § 1692f.  As such, we affirm the district court's dismissal of Appellant's § 1692f claim as well.

## IV.

For the reasons set forth above, we disagree with the district court's finding that the FDCPA does not apply to Appellees' conduct before the state court. Because the plain text of the Act makes no exception for "formulaic procedural filings" and does not limit applicability of §§ 1692d–1692f to conduct directed at the consumer, Appellees' state-court activities fall squarely within the four corners of the FDCPA and were actionable thereunder.  However, we ultimately affirm the district court's dismissal of Appellant's complaint based on Appellant's failure to state a claim under the FDCPA.

**AFFIRMED**.