[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12585
_____

D.C. Docket No. 2:15-cv-14051-KAM

CONNIE BISHOP,
on behalf of herself and all others similarly situated,

Plaintiff – Appellant,

versus

ROSS EARLE & BONAN, P.A.,
a Florida professional association,
JACOB E. ENSOR,
individually,

Defendants – Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 25, 2016)

Before MARCUS, JORDAN and BLACK, Circuit Judges.

BLACK, Circuit Judge:

# I.  BACKGROUND

This case concerns an interpretation of §§ 1692g and 1692e of the Fair Debt Collection Practices Act (FDCPA).  Section 1692g of the FDCPA requires a debt collector to provide a consumer with a notice of debt that contains:

> a statement that if the consumer notifies the debt collector *in writing* within [a] thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(a)(4) (emphasis added).  This notice must be either contained in the "initial communication with a consumer" or provided within five days of such communication.  *Id.* § 1692g(a).

On December 23, 2014, Appellees Ross Earle & Bonan, P.A., and Jacob Ensor (the Collectors) sent a debt-collection letter to the attorney of Appellant Connie Bishop.[1]  The letter properly informed Bishop that she had thirty days to dispute the debt, but it neglected to inform her that she must dispute the debt "in writing."  Specifically, the letter said:

> Federal law gives you thirty (30) days after your receipt of this letter, to dispute the validity of the debt or any portion of it.  If you do not dispute it within that period, we will assume it is valid.  If you do

---

[1] The letter stated that Bishop owed fines in the amount of $2,000.00 to her homeowners' association for failing to clean her roof and paint the exterior of her home.  The letter explained that it was addressed to Bishop's attorney, Charles Sullivan, because Bishop had asked the homeowners' association to contact Sullivan regarding the fines.  Ross Earle & Bonan (a law firm) and Jacob Ensor (an attorney) represented the homeowners' association.

dispute the debt, or any portion of it, you must notify us within the said thirty (30) day period, and we will, as required by law, obtain and mail to you, proof of the debt.

On February 18, 2015, Bishop filed a complaint against the Collectors under the FDCPA.  She alleged that the letter violated § 1692g of the FDCPA by failing to notify her of the "in writing" requirement.  She also alleged that omitting the "in writing" requirement violated § 1692e, which prohibits using "false representation or deceptive means to collect or attempt to collect any debt."  *Id.* § 1692e(10).  The district court dismissed the complaint with prejudice for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).  Bishop appeals.

## II.  STANDARD OF REVIEW

We review *de novo* the grant of a motion to dismiss for failure to state a claim.  *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1296-97 (11th Cir. 2015).  We accept "the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff."  *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).  However, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations."  *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).  To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face," meaning it must contain "factual content that allows the court to draw the reasonable inference

3

that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.  THE FDCPA

The FDCPA was enacted in the context of existing Federal Trade Commission (FTC) regulation of unfair and deceptive debt-collection practices. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172-75 (11th Cir. 1985).  Despite existing regulation, Congress found "abundant evidence of abusive, deceptive, and unfair debt collection practices by many debt collectors."  15 U.S.C. § 1692(a). "Existing laws and procedures for redressing these injuries [were] inadequate to protect consumers."  *Id.* § 1692(b).  Moreover, Congress found that "[m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts."  *Id.* § 1692(c).

Congress set out to correct these problems by supplementing and expanding upon existing debt-collection regulations.  *Jeter*, 760 F.2d at 1174.  The declared purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  To advance these goals, the FDCPA codified several specific consumer-protective rights, including the rights set forth in § 1692g.  *Jeter*, 760

4

F.2d at 1174 n.5.  Most significantly, the FDCPA gave consumers a private right of action to enforce its provisions against debt collectors.  *Id.*

## IV.  DISCUSSION

We address three issues of first impression in the Eleventh Circuit.  The first is whether a debt-collection letter sent to the consumer's attorney—rather than directly to the consumer—qualifies as a "communication with a consumer" so as to trigger § 1692g of the FDCPA.  The second is whether omitting the "in writing" requirement set forth in § 1692g amounts to waiver of that requirement by the debt collector, and, if so, whether such a waiver advances the purpose of the FDCPA.  The third is whether omission of the "in writing" requirement states a claim for "false, deceptive, or misleading" behavior in violation of  § 1692e.   We address each issue in turn.

## A.

The Collectors first argue that because the debt-collection letter was sent to Bishop's attorney, and not to Bishop herself, it was not a "communication with a consumer" within the meaning of § 1692g.  The question of whether, and when, the FDCPA regulates attorney communications has been a subject of disagreement between the circuits.  *Compare Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 936 (9th Cir. 2007) (holding that "communications directed only to a debtor's attorney, and unaccompanied by any threat to contact the debtor, are not actionable

under the [FDCPA]" (footnote omitted)), *with Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773-75 (7th Cir. 2007) (holding that communications directed to a consumer's attorney are actionable under §§ 1692d–1692g).

The Eleventh Circuit first addressed this question in *Miljkovic v. Shafritz & Dinkin, P.A.*, holding that "conduct toward a consumer's attorney [is] covered by the FDCPA in the absence of any express exemption therefor." *Miljkovic*, 791 F.3d at 1297. *Miljkovic* was decided in the context of §§ 1692d–1692f, which prohibit "abusive, misleading, and unfair" debt-collection practices. *Id.* at 1294. Yet its reasoning is applicable here. Following *Miljkovic*, we conclude that the protections of § 1692g, like those set forth in §§ 1692d–1692f, do not fail simply because the consumer has retained an attorney.

As in *Miljkovic*, our inquiry begins with the specific provision invoked. *See id.* at 1300. Section 1692g regulates the contents of a "notice of debt," as well as certain procedures for handling disputed debts. 15 U.S.C. § 1692g(a)–(b). Its protections are triggered when a debt collector makes an "initial communication with a consumer."[2] *Id.* § 1692g(a). To confirm that § 1692g applies to attorney communications, we need look no further than this triggering phrase. The FDCPA

---

[2] Either concurrently with this "initial communication," or shortly thereafter, the debt collector must notify the consumer of the amount of the debt, the name of the creditor, and the procedure for disputing the debt. 15 U.S.C. § 1692g(a). Upon receipt of this notice, the consumer has thirty days to dispute the validity of the debt. *Id.* If the consumer does so in writing, then the debt collector "shall cease collection of the debt" until the debt collector obtains verification of the debt and mails it to the consumer. *Id.* § 1692g(b).

defines the term "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).  It defines "communication" as "the conveying of information regarding a debt directly *or indirectly* to any person through any medium." *Id.* § 1692a(2) (emphasis added).  It follows that § 1692g, which applies to the "initial communication with a consumer," can be triggered either by a direct communication or by an indirect communication.

We join the Third, Fourth, and Seventh Circuits in holding that a debt-collection notice sent to a consumer's attorney is just such an "indirect" communication.  *See Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011); *Evory*, 505 F.3d at 773; *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232-33 (4th Cir. 2007).  This conclusion flows from a commonsense understanding of the attorney-client relationship.  *See Evory*, 505 F.3d at 773 ("The lawyer receives the notice and shares it with, or explains it to, his client.  Hence the debt collector is communicating with the consumer within the meaning of the Act . . . ."); Model Rules of Prof'l Conduct R. 1.4 (2014) ("A lawyer shall . . . keep the client reasonably informed [and] explain a matter to the extent reasonably necessary to permit the client to make informed decisions.").  The attorney is a conduit to the consumer; thus, a debt-collection letter sent to the consumer's attorney is an indirect communication with the consumer.

That § 1692g covers attorney communications is borne out by the larger statutory context. *See Miljkovic*, 791 F.3d at 1301-02 (analyzing §§ 1692d–1692f in the context of the FDCPA as a whole). First, § 1692c provides further evidence that attorney communications are "indirect" communications with the consumer. Section 1692c states that "a debt collector may not communicate with a consumer . . . if the debt collector knows the consumer is represented by an attorney . . . unless the attorney consents to *direct* communication with the consumer." 15 U.S.C. § 1692c(a)(2) (emphasis added). By employing the word "direct" in this manner, § 1692c distinguishes between "direct" communication with the consumer—permitted only with attorney consent—and "indirect" communication through the consumer's attorney. *See id.* § 1692a(2) (establishing that communication under the FDCPA is either "direct" or "indirect"). "[W]e must construe [a] statute to give effect, if possible, to every word and clause." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1204 (11th Cir. 2007). We see no reason to depart from that rule here.[3]

---

[3] The Collectors make much of the argument that § 1692g excludes attorney communications because it refers to "the consumer" rather than "any person" or "any debt." *See Miljkovic*, 791 F.3d at 1301-02 (suggesting that § 1692c excludes attorney communications because its language is more consumer specific than §§ 1692d–1692f). But unlike § 1692c, § 1692g does not "clearly and necessarily distinguish[] 'consumers' from 'attorneys.'" *Id.* at 1301. Nor does it distinguish between "direct" and "indirect" communications. *See* 15 U.S.C. § 1692c(a)(2). The mere use of the word "consumer"—absent an "express exemption"—is insufficient to exclude attorney communications from a provision of the FDCPA. *See Miljkovic*, 791 F.3d at 1297.

More generally, two important goals of the FDCPA are "to eliminate abusive debt collection practices" and "to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To advance these goals, the FDCPA encourages the involvement of attorneys. *See id.* § 1692c(a) ("[A] debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney . . . ."); *id.* § 1692b (explaining that when a consumer is represented by an attorney, a debt collector seeking location information "shall . . . not communicate with any person other than that attorney"). As we observed in *Miljkovic*, when analyzing §§ 1692d–1692f, it would be "odd . . . indeed" to encourage the involvement of attorneys while simultaneously removing the other protections afforded by the FDCPA. *Miljkovic*, 791 F.3d at 1301-03.

To hold that represented consumers forfeit their protections under § 1692g would be similarly incongruous. Section 1692g, like §§ 1692d–1692f, contains protections for which representation by an attorney—no matter how competent— would make an inadequate substitute. For example, it would be unreasonable to rely on the consumer's attorney to notify the consumer of the amount of her debt and the name of the creditor to whom the debt is owed. *See* § 1692g(a)(1)–(2). Only the debt collector can provide that information. And the right to such basic information does not evaporate upon retaining an attorney. Similarly, § 1692g(b)

9

requires debt collectors to provide the consumer with verification of contested debts. Nothing in the FDCPA suggests that this obligation is excused when the consumer is represented by an attorney.

The Collectors address this incongruity by attempting to parse the "in writing" requirement separately from other § 1692g protections. They do not challenge that a represented consumer retains the right to verification and basic debt-related information, but suggest that notice of the "in writing" requirement is unnecessary because the attorney is capable of researching that requirement and explaining it to the consumer. *See Guerrero*, 499 F.3d at 939 (reasoning that "when an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer" (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 127-28 (2d Cir. 2002))). Whatever the merits of this argument as a policy matter, it fails because there is no textual basis for treating the "in writing" requirement differently from the other rights contained in § 1692g. We must read the FDCPA in a way that gives full effect to each of the protections at stake. Only by applying § 1692g to attorney communications can we ensure that consumers receive both legal representation and the full protections intended by Congress. We hold that a debt-collection letter sent to the consumer's attorney is a "communication with a consumer" within the meaning of § 1692g.

10

B.

The Collectors next argue that by omitting the "in writing" requirement they were simply waiving that requirement and agreeing to permit Bishop to dispute her debt either orally or in writing. They assert that such a waiver protects consumers and thus actually *advances* the purpose of the FDCPA. In particular, they suggest that debt collectors who waive the "in writing" requirement (by omitting it from the notice of debt) are protecting consumers by accepting a less demanding means of dispute than they are otherwise entitled to require. Thus, the Collectors argue, omission of the "in writing" requirement does not violate § 1692g.

We reject the notion that § 1692g gives debt collectors discretion to omit the "in writing" requirement or cure improper notice by claiming waiver. The statute is clear. The debt collector "shall" notify the consumer of her right to dispute the debt in writing. 15 U.S.C. § 1692g(a). Likewise, the consumer has a right to verification only if she disputes the debt in writing. *Id.* § 1692g(b); *see also Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013) ("[C]onsumers [must] take the extra step of putting a dispute in writing before claiming the more burdensome set of rights defined in § 1692g(a)(4), (a)(5) and (b)."); *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 146 (3d Cir. 2013) ("[A] dispute of a debt must be in writing in order to be effective . . . ."); *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1081 (9th Cir. 2005) (explaining

11

that a consumer can trigger the right to verification "only through written dispute"). Nothing in the statute suggests that debt collectors have discretion to relax these requirements.

In any event, the FDCPA already specifies a remedy for violations of § 1692g. Section 1692k imposes civil liability on "any debt collector who fails to comply with any provision" of the FDCPA. 15 U.S.C. § 1692k(a). The term "any provision" clearly includes § 1692g; there is nothing elsewhere in the statute to suggest an exemption. This Court will not judicially fashion a "waiver remedy" for violations of § 1692g when the FDCPA identifies civil liability as the remedy for noncompliance.[4]

## C.

Finally, the Collectors argue that omission of the "in writing" requirement is not "false, deceptive, or misleading" within the meaning of § 1692e. Section 1692e prohibits "false, deceptive, or misleading" behavior, including using "false representation or deceptive means to collect or attempt to collect any debt." *Id.* § 1692e(10). Whether a particular communication is false or deceptive is a question for the jury. *Jeter*, 760 F.2d at 1178. However, whether Bishop alleges

---

[4] We do not mean to suggest that debt collectors cannot choose to cooperate with consumers who dispute their debts orally. We hold only that such cooperation does not cure improper notice under § 1692g. Similarly, the facts of this case do not require us to decide whether a debt collector who omits the "in writing" requirement in violation of § 1692g may mitigate damages by honoring an oral request for verification.

facts sufficient to state a claim under § 1692e is a legal question for the court. *Miljkovic*, 791 F.3d at 1307 n.11.  We hold that she does.

When evaluating a communication under § 1692e, we ask whether the "least sophisticated consumer" would be deceived or misled by the communication at issue.  *Id.* at 1306; *Jeter*, 760 F.2d at 1177.  "The 'least-sophisticated consumer' standard is consistent with basic consumer-protection principles."  *LeBlanc v. Unifund CCR Partner*s, 601 F.3d 1185, 1194 (11th Cir. 2010).  Its purpose is "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."  *Id.* (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)).  As we explained in *LeBlanc*:

> The "least sophisticated consumer" can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.  However, the test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness.

*Id.* (citations and quotation marks omitted).

We have generally resisted tailoring the "least sophisticated consumer" standard to the individual consumer.  *See Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 (11th Cir. 2014) ("The inquiry is not whether the particular plaintiff-consumer was deceived or misled.").  The Collectors nevertheless argue that communications delivered to the consumer indirectly, through an attorney, are

13

a special case. They urge us to adopt a more demanding "competent lawyer" standard for attorney communications. We decline to do so on the facts of this case.

The few circuits that have adopted a "competent lawyer" standard have done so in markedly different circumstances. In *Evory*, the seminal case on the issue, the Seventh Circuit held that "a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable." *Evory*, 505 F.3d at 775. The court reasoned that in some cases a lawyer is "less likely to be either deceived or misled" than the consumer. *Id.* An attorney, for example, would be less likely to accept a "one time only" settlement offer. *Id.* at 775-76. The "competent lawyer" standard would bar such a claim. *See id.* But *Evory* distinguished false statements from statements that are merely misleading or deceptive. The court explained that the "competent lawyer" standard does not bar recovery when a lawyer would be "unable to discover the falsity of the representation without an investigation." *Id.* at 775. A false statement of fact would therefore be actionable "whether made to the consumer directly, or indirectly through his lawyer." *Id.* *Evory* thus appears to limit the "competent lawyer" standard to misleading and deceptive behavior; misrepresentations are evaluated under the familiar "least sophisticated consumer" standard. *See id*.

14

The Tenth Circuit made a similar distinction in *Dikeman v. Nat'l Educators, Inc.*, 81 F.3d 949 (10th Cir. 1996). *Dikeman* was decided under a prior version of § 1692e(11) requiring debt collectors to "disclose" that they were attempting to collect a debt in each communication with the consumer.[5] *Id.* at 951. The court reasoned that the term "disclose" did not always require explicit, verbal or written disclosure. *Id.* at 953. For example, sometimes the fact that a debt collector is attempting to collect a debt "would be clear to an attorney from the communication viewed in context."[6] *Id.* at 951. Then a "verbal statement would be a pointless formality." *Id.* at 954. Under *Dikeman*, the absence of such a statement could never be "deceptive or misleading" under § 1692e(11). *Id.* at 953.

*Dikeman* embraced the "competent lawyer" standard insofar as it relied on the professional competence of attorneys to hold that explicit disclosure is not always necessary under § 1692e(11). Like *Evory*, however, the *Dikeman* court took pains to distinguish between behavior that is less likely to mislead an attorney—such as tacit or non-verbal disclosure—and cases involving falsity and

---

[5] Section 1692e(11) is now limited in part to the "initial communication" with a consumer. *See* 15 U.S.C. § 1692e(11).

[6] The attorney in *Dikeman* had been hired specifically to defend the consumer in a debt-collection matter. *Dikeman*, 81 F.3d at 953. As part of this representation, he contacted the collection company and requested § 1692g verification. *Id.* at 950. The company complied with the request, but failed to include a statement that it was attempting to collect a debt. *Id.* The court held that this was not misleading, however, because the company identified itself as "Continental Collection Agency, Ltd."—the same company the attorney had initially contacted—and was clearly responding to the attorney's verification request. *Id.* at 953.

15

misrepresentation. The latter remained actionable whether or not a "competent lawyer" was likely to be misled. The court explained: "We are not holding here that an *affirmative misrepresentation* to a lawyer would be excusable merely because a lawyer could see through the false statement." *Id.* at 954 n.14. Thus, *Dikeman*, like *Evory*, excluded false statements from the new, heightened standard.

Neither *Evory* nor *Dikeman* support adopting the "competent lawyer" standard in this case. This is not a case in which a lawyer would be "less likely to be either deceived or misled" than a consumer. *See Evory*, 505 F.3d at 775. Nor does this case involve a disclosure which, albeit non-verbal, is "innocent and sufficient" in context. *See Dikeman*, 81 F.3d at 953. The communication alleged in this case omitted a material term required by § 1692g(a). Specifically, the letter did not inform Bishop that she must dispute her debt "in writing" to trigger her verification rights under § 1692g(b). By omitting this requirement, the Collectors instructed Bishop that she could invoke § 1692g(b) by disputing her debt orally—a misstatement of the law surrounding debt-verification requests. This misrepresentation was not apparent on the face of the letter;[7] it would thus state a claim even in jurisdictions that apply the "competent lawyer" standard.

Nor will we craft a broader version of the "competent lawyer" standard than that described in *Evory* and *Dikeman*. The "least sophisticated consumer" standard

---

[7] The letter did not cite the FDCPA or otherwise refer Bishop's attorney to the full text of the statute; rather, it purported to be a complete statement of what "federal law" requires.

16

is grounded in the history and purpose of the FDCPA.  *See Jeter*, 760 F.2d at 1174 (adopting the "least sophisticated consumer" standard because Congress intended the FDCPA to expand and supplement existing consumer-protection laws).  The FDCPA exists to "protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  Consumer-protection laws are "not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking, and the credulous."  *Jeter*, 760 F.2d at 1172-73 (quoting *Charles of the Ritz Distrib. Corp. v. FTC*, 143 F.2d 676, 679 (2d Cir.1944)).  The "least sophisticated consumer" standard advances this purpose, and we will not abandon it lightly.

Furthermore, this court has recognized the principle that consumers should not be required to bear the costs of abusive debt-collection practices.  We reasoned in *Miljkovic* that excluding attorney communications from § 1692e would contravene the purpose of the FDCPA because "the consumer, rather than the debt collector, [would] be forced to bear the costs resulting from the debt collector's conduct."  *Miljkovic*, 791 F.3d at 1304.  *Evory* recognized a similar justification for excluding false statements from the "competent lawyer" standard.  *See Evory*, 505 F.3d at 775 (reasoning that even under the "competent lawyer" standard an attorney should not be expected to conduct an investigation he "might be unable, depending on his client's resources, to undertake").  An expansion of *Evory* that included false statements would require attorneys to expend client resources

17

second-guessing the truthfulness of debt collection communications.  This is precisely the type of burden shifting we rejected in *Miljkovic*.

Finally, we note that consumer protection is not the only goal of the FDCPA.  The statute was also designed to "eliminate abusive debt collection practices by debt collectors" and "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).  Notwithstanding their effect—or lack thereof—on particular consumers, false statements are an abusive debt collection practice.  The "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced."  *Jeter*, 760 F.2d at 1173 (quoting *Charles of the Ritz*, 143 F.2d at 679); *see also Miljkovic* 791 F.3d at 1303 (observing that the "natural point of aim" of the FDCPA is "the debt-collecting activities of debt collectors," and that regulating those activities has the "inbuilt consequence" of protecting consumers).  We see no basis in the FDCPA to treat false statements made to lawyers differently from false statements made to consumers themselves.  We conclude, therefore, that this case is not an appropriate vehicle to adopt the "competent lawyer" standard in any form.[8]

---

[8] We emphasize that by rejecting the "competent lawyer" standard on the facts of this case we do not foreclose it entirely.  We express no opinion regarding cases in which the facts alleged are merely misleading.  *See Evory*, 505 F.3d at 775; *Dikeman*, 81 F.3d at 953.  This case

18

We hold that the communication alleged in this case states a claim for "false, deceptive, or misleading" behavior under § 1692e.  Neither the "competent lawyer" nor the "least sophisticated consumer" could be said to have notice of the "in writing" requirement after receiving a letter like the one alleged.  *See Dikeman*, 81 F.3d at 953.  Nor are we inclined to excuse false statements, as a matter of law, based merely on the suggestion that a lawyer might be better equipped to recognize their falsity.  *See Jeter*, 760 F.2d at 1173; *Evory*, 505 F.3d at 775.  We emphasize the fact-specific nature of this holding.  The "initial communication" alleged in this case states a claim under § 1692e because it misstates the law, omits a material term required by § 1692g(a), and misrepresents consumer rights under the FDCPA.  *See* 15 U.S.C. § 1692g.

## V.  CONCLUSION

For the foregoing reasons, we conclude that the district court erred in dismissing Bishop's claims under §§ 1692g and 1692e of the FDCPA.

**REVERSED AND REMANDED.**

---

is limited, moreover, to the notice requirements of  § 1692g(a).  It does not implicate formal legal pleadings.  *See* § 1692g(d) (excluding "a formal pleading in a civil action" from the notice requirements of § 1692g(a)).  Nor does it involve "conduct inherent to the adversarial process," such as asserting a legal position, presenting a legal argument, or invoking an available remedy.  *Compare Miljkovic*, 791 F.3d at 1307 (rejecting a § 1692e claim under the "least sophisticated consumer" standard because "[w]ithout more, we will not limit [the] ability to engage in conduct inherent to the adversarial process"), *with Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 574 (8th Cir. 2015) ("[A] competent lawyer served with the debt collector's discovery requests does not need instructions as to the client's 'rights in answering.'").

19