[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  19-13383
_____

D.C. Docket No. 0:18-cv-62440-RAR

MANUEL E. RIVAS,

Plaintiff-Appellant,

versus

MIDLAND FUNDING, LLC,

Defendant-Appellee.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 27, 2021)

Before MARTIN, LUCK, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

The question in this appeal is whether a debt collector, Midland Funding LLC,

can be held liable for the allegedly false representations that another entity, Midland

Credit Management, Inc., made while acting on its behalf. Manuel Rivas appeals

from the district court's order granting summary judgment for Funding on two counts alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e and 1692e(2)(A), and one count alleging a violation of the Florida Consumer Collection Practices Act, FLA. STAT. § 559.72(9). Under the circumstances of this case, we hold that Funding cannot be held liable for Credit Management's representations under either Act. Accordingly, we affirm.

## I.

Because this is an appeal from an order granting summary judgment, the following facts are recounted in the light most favorable to Rivas.

Rivas opened, used, and defaulted on three credit card accounts for an Amazon card, a TJ Maxx card, and a Lowe's card. The bank possessing the accounts then sold them to Funding, a company with no employees that acquires delinquent accounts but neither manages nor collects them. Funding has an agreement with its affiliate, Credit Management, under which the latter files lawsuits, sends collection letters, and accepts payments through its website.

After Funding acquired Rivas's accounts, Credit Management tried to collect them on Funding's behalf, filing lawsuits in Florida state court against Rivas. The lawsuits sought the $4,561.98 that Rivas owed on the Amazon account, $4,300.23 on the TJ Maxx account, and $3,821.19 on the Lowe's account. The lawsuits were

2

filed in Funding's name, but Credit Management was "responsible for reviewing, processing, and entering all hearing results."

Rivas and Funding eventually entered into a settlement agreement, which was docketed in the Amazon lawsuit. Under the agreement, Rivas would pay $1,100.00 to resolve all three lawsuits by making $50.00 monthly payments "at the following online address: midlandcreditonline.com." If Rivas defaulted on the agreement, he would be liable for the total debt amount on the three accounts less any payments that he had made up to that point. In return, Funding agreed to dismiss its lawsuits regarding Rivas's Lowe's and TJ Maxx accounts by June 19, 2018.

Rivas made his first payment under the settlement agreement through Credit Management's website. When he made that payment, the website displayed his current balance as $1,100.00. But the next time he made a payment, the website displayed his current balance as $4,511.98. Each subsequent occasion that Rivas accessed the website to make a payment, the website displayed a current balance exceeding $4,000 with open claims for the TJ Maxx and Lowe's accounts that Funding had agreed to dismiss. Rivas suffered considerable distress after seeing these continued errors in his balance.

Rivas sued Funding, alleging multiple violations of the FDCPA and FCCPA, including two counts for violating the FDCPA's prohibition on misrepresentations, a count for violating the FCCPA's prohibition on enforcing a non-existent legal

3

right, and a count for declaratory judgment. Rivas did not sue Credit Management, but he argued that its website falsely represented the amounts of his alleged debts and the legal status of the TJ Maxx and Lowe's accounts.

After discovery, Funding filed a motion for summary judgment, arguing that it could not be held liable for the erroneous statements on Credit Management's website. Funding noted that it neither collects any debts for another party nor controls the statements on Credit Management's website. And Funding emphasized that it was Credit Management who filed the lawsuits against Rivas on Funding's behalf, Credit Management who collected all payments through its website without forwarding any payments to Funding, and Credit Management who controlled the representations on its own website.

The district court granted Funding's motion for summary judgment. The court held that, although Funding does not collect debts for third parties, it is a "debt collector" under the FDCPA's "principal purpose" definition. Nonetheless, the district court held that Funding could not be held liable under the FDCPA or the FCCPA. The district court reasoned that "Rivas has not presented, and the record does not contain, any evidence to suggest that [Funding] was aware of, or had any control over, the amounts being displayed on the website." Rivas timely appealed.

**II.**

4

Before reaching the merits of this appeal, we must address our own jurisdiction and that of the district court. Specifically, we must determine whether Rivas had Article III standing both to bring his claims initially and now to appeal their dismissal. *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (citing *United States v. Hays*, 515 U.S. 737, 742 (1995) and *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998)). To establish Article III standing, a plaintiff must show three elements: (1) that he "suffered an injury in fact," (2) caused by the defendant, (3) that a favorable decision would likely redress. *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Foremost among these elements is an injury in fact, which consists of "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (first citing *Steel Co.*, 523 U.S. at 103; and then citing *Lujan*, 504 U.S. at 560)).

In *Trichell*, we held that "concrete" injuries cannot be merely "intangible" and that plaintiffs in an FDCPA case must establish "reliance and ensuing damages." *See id.* at 997–1000. There, the plaintiffs alleged that an FDCPA violation "created a risk that unsophisticated consumers might be misled into making unnecessary or even harmful payments on time-barred debt." *Id.* at 1000. They also claimed an "informational injury" based on an alleged right under the FDCPA "to receive truthful communications from debt collectors." *Id.* at 1003. We concluded, however,

5

that the violation caused no "downstream consequences" or "adverse effects." *Id.* at 1004. Neither the risk of injury nor the informational injury in *Trichell* was sufficient to confer standing. *Id.* at 1000.

In contrast to those intangible and consequence-free injuries, Rivas's injury here was tangible and his reliance on the information on Credit Management's website had damaging consequences, namely loss of sleep and extreme stress. At first, Rivas was merely "confused" and "really upset" to see the wrong amount due on the website. This confusion festered to the point that Rivas became so "stressed and worried" that he "couldn't sleep." He was even more concerned when the website still reflected the same balance "a couple of days later." The disparity on the website persisted for nearly six months until the TJ Maxx and Lowe's lawsuits were finally dismissed. Rivas testified that "[i]t's hard to sleep, it's hard to concentrate sometimes and it's just very stressful." He worried that he might make an error or pay on the wrong account and so be forced to pay the entire amount of the three accounts. These injuries are sufficiently tangible—and therefore concrete—to confer Article III standing.

## III.

We now turn to the merits of Rivas's appeal. "We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party." *Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d

6

944, 949–50 (11th Cir. 2016). We will affirm a summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Rivas sued Funding under sections of the FDCPA that prevent a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e & 1692e(2)(A). But the undisputed facts establish that Funding did not make any representations itself or control Credit Management's website. The question, then, is whether Funding can be held indirectly liable for Credit Management's representations. Rivas makes four arguments for holding Funding liable under the FDCPA, but none work under the facts of this case.

First, Rivas cites authorities from our sister circuits that rely on agency principles and common law ideas about vicarious liability to support indirect liability for violations of the FDCPA. But, in his reply brief and at oral argument, Rivas expressly disclaimed any reliance on vicarious liability or agency principles. Instead, his indirect liability argument is based solely on the text of the statute. Because of this concession, these out-of-circuit precedents are irrelevant here. *See Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1172 (9th Cir. 2006) ("[G]eneral principles of agency . . . form the basis of vicarious liability under the

7

FDCPA . . . ."); *Barbato v. Greystone All., LLC*, 916 F.3d 260, 269 (3d Cir. 2019) ("[W]e have relied on traditional agency principles in holding parties vicariously liable under the FDCPA . . . ."); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404–05 (3d Cir. 2000) (analyzing agency principles and holding general partner vicariously liable for FDCPA violations of other members of partnership); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016) (holding debt collector vicariously liable for actions taken on its behalf by another debt collector).

Second, Rivas argues that the definition of "debt collector" in the FDCPA supports holding Funding liable for Credit Management's representations. Under the FDCPA, a "debt collector" is any person who either (1) "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). We refer to the first clause of this definition as the "regularly collects" clause and the second clause as the "principal purposes" clause. Satisfying either clause of this definition will render the person a "debt collector," subject to the substantive provisions of the FDCPA. *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1315 (11th Cir. 2015).

Rivas argues that the statute's use of the word "indirectly" in this definition suggests that a debt collector is liable for the actions of its agents. But only the

8

"regularly collects" clause—not the "principal purposes" clause—includes the word "indirectly." Here, the district court held, and the parties concede, that Funding is not a debt collector under the "regularly collects" clause but is a debt collector, if at all, under the "principal purposes" clause. Accordingly, even if we were to assume that a "debt collector" under the "regularly collects" clause might be indirectly liable for the actions of others acting on its behalf, that clause has no application to this case. Because Funding is a debt collector, if at all, under only the "principal purposes" clause of Section 1692a(6), it cannot be held liable based on the use of "indirectly" in the separate and inapplicable "regularly collects" definition.

Third, Rivas argues that the broad definition of "communication" in Section 1692a(2) supports indirect liability. The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). This argument also fails on the facts of this case. Even if one could sue over an indirect "communication," Rivas is not suing over a "communication." That word—although broadly defined in the definition section of the statute—is not used in the substantive sections under which Rivas has brought his claims.

Again, Funding cannot be held liable based on a definition that does not apply to its conduct. Rivas alleged that Funding violated Section 1692e, generally, and 1692e(2)(A), specifically. Section 1692e generally prohibits the use of "any false,

9

deceptive, or misleading representation or means in connection with the collection of any debt." Certain "communications" are listed as examples of "misleading representation[s] or means." *See* 15 U.S.C. § 1692e(8), (9), (11). But Rivas does not allege that anyone—Funding or Credit Management—made any of those "communications" or otherwise violated a provision that uses the defined term "communication." Instead, the specific subsection that Rivas relies on, Section 1692e(2)(A), prohibits a "false representation of the character, amount, or legal status of any debt" and that is, in fact, what Rivas alleges—that the website falsely represented the amount and legal status of his debt.

That Rivas has not sued over a "communication" distinguishes this appeal from two of our previous decisions analyzing the definition of "communication" under the FDCPA: *Bishop v. Ross & Bonan, P.A.*, 817 F.3d 1268 (11th Cir. 2016), and *Hart v. Credit Control, LLC*, 871 F.3d 1255 (11th Cir. 2017). In *Bishop*, this Court analyzed Section 1692g, which imposes certain requirements for a debt collector's "initial communication" with a consumer. We held that Section 1692g is subject to the definition of "communication," which can "be triggered either by a direct communication or by an indirect communication." *Bishop*, 817 F.3d at 1272 (11th Cir. 2016). And in *Hart*, the plaintiff alleged that the debt collector had violated Section 1692e(11), which prohibits "[t]he failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect

10

a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector." 871 F.3d at 1257. These precedents about the definition of "communication" have no import here.[1]

Fourth, Rivas relies on several out-of-circuit decisions analyzing vicarious liability under Section 1692i of the FDCPA. These precedents suggest that there might be indirect liability for a violation of Section 1692i under certain circumstances. *Compare Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) (no vicarious liability for non-debt collector whose counsel, who was a debt collector, allegedly violated Section 1692i) *with Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1513, 1516 (9th Cir. 1994) (vicarious liability existed under Section 1692i for venue decision made by defendant's counsel, who was a debt collector). But, like the definition of "communication" and the "regularly collects" clause, Section 1692i is simply not relevant here.

---

[1] Our dissenting colleague argues that *Bishop* "demonstrates that an action under section 1692e can be based on an indirect communication." But our reasoning in *Bishop* does not apply in this case. In *Bishop* we "emphasized the fact-specific nature of this holding." 817 F.3d at 1277. The facts in *Bishop* involved a Section 1692e violation based on the violation of another provision that itself included the defined term "communication." There, we held that the plaintiff had "a claim under § 1692e because" a letter sent to her lawyer "omit[ed] a material term required by § 1692g(a)." *Id.* After explaining that "a debt-collection letter sent to the consumer's attorney— rather than directly to the consumer—qualifies as a 'communication with a consumer'" under Section 1692g, we held that the debt collector's violation of Section 1692g(a) is actionable as "'false, deceptive, or misleading' behavior in violation of [Section] 1692e." *Id.* at 1271. We did not hold that the definition section of the statute has a substantive effect even where the statute does not use a defined word.

11

For these reasons, the district court was correct to grant summary judgment on Rivas's FDCPA claims. The definition of "communication" in Section 1692a(2) and the definition of "debt collector" in Section 1692a(6) are irrelevant to Rivas's false representation claims under Section 1692e. As are precedents from other courts that either rely on arguments that Rivas has expressly waived or that analyze the text of unrelated statutory provisions.

The district court also correctly granted summary judgment on the state-law FCCPA claim. Apart from his arguments about the FDCPA, Rivas does not argue that the FCCPA provides an independent basis to hold Funding liable. The FCCPA defines "communication" in the same way as the FDCPA, FLA. STAT. § 559.55(2), but Rivas likewise sued Funding for violating a substantive provision of the FCCPA that does not use that word, FLA. STAT. § 559.72(9). Because the district court was correct to grant summary judgment on Rivas's FDCPA claims, it correctly granted summary judgment on his FCCPA claim as well.

## IV.

The district court's judgment is **AFFIRMED**.

MARTIN, Circuit Judge, concurring in part and dissenting in part:

I agree with most of the holdings made by the majority in Mr. Rivas's case. I agree he has Article III standing to sue Midland Funding, LLC ("Midland Funding") under the Fair Debt Collection Practices Act ("FDCPA") for his injuries. See Maj. Op. at 5–6. It is also true, as the majority opinion observes, that Mr. Rivas does not seek to hold Midland Funding liable for Midland Credit Management, Inc.'s ("Midland Credit") misrepresentations based on vicarious liability or agency principles. See id. at 7–8. And since Mr. Rivas does not make those arguments, this case does not require us to decide whether to join our sister circuits who say a debt collector can be vicariously liable under the FDCPA for the acts of its affiliates. See, e.g., Janetos v. Fulton Friedman & Gullace, LLP, 825 F.3d 317, 325 (7th Cir. 2016). The majority opinion is also correct that this record does not allow us to decide whether Midland Funding can be indirectly liable for Midland Credit's misrepresentations under the "regularly collects" clause of the "debt collector" definition in the FDCPA. See Maj. Op. at 8–9. And finally, since the venue provision of the FDCPA, 15 U.S.C. § 1692i, is not at issue in Mr. Rivas's case, I agree that vicarious liability cannot be imposed under that provision. See Maj. Op. at 11–12.

Where I do part ways with the majority opinion, however, is I believe Midland Funding could be found liable to Mr. Rivas for indirect communications

13

made to him through Midland Credit's website under 15 U.S.C. § 1692e.  Mr.

Rivas alleged that Midland Funding violated this provision and I think a reasonable

jury could agree.  I therefore respectfully dissent to the majority's holding on this

point.

Mr. Rivas says the definition of "communication" in the FDCPA allows

liability to be imposed on Midland Funding based on its indirect communications

made through Midland Credit's website.  The settlement agreement Mr. Rivas

entered into with Midland Funding in the debt-collection action said "[p]ayments

are to be made directly to [Midland Funding] at the following on-line address:

midlandcreditonline.com."  In fact, I don't see that the settlement agreement tells

Mr. Rivas any other way to pay.

The FDCPA defines "communication" as "the conveying of information

regarding a debt directly or indirectly to any person through any medium."  15

U.S.C. § 1692a(2).  The majority opinion says Mr. Rivas cannot avail himself of

the "broadly defined" term "communication" because that word is "not used in the

substantive sections under which Rivas has brought his claims."  Maj. Op. at 9–10.

But section 1692e generally makes it unlawful for a debt collector to "use any

false, deceptive, or misleading representation or means in connection with the

collection of any debt."  15 U.S.C. § 1692e.  And I read the "any . . . representation

or means" language in section 1692e to include indirect communications like those

14

Mr. Rivas says Midland Funding made through Midland Credit's website. This seems to me to be the proper conclusion even though Mr. Rivas's claims rely on the general language of 15 U.S.C. § 1692e and the specific language of 15 U.S.C. § 1692e(2)(A), which do not use the word "communication." See 15 U.S.C. § 1692e. I come to this conclusion for three reasons.

First, our Court has characterized section 1692e as having a "broad scope" with "broad prohibitions." Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1261 (11th Cir. 2014), overruled on other grounds by Midland Funding, LLC v. Johnson, 581 U.S. ___, 137 S. Ct. 1407 (2017). Indeed, section 1692e prohibits the use of "any false, deceptive, or misleading representation or means" in connection with the collection of any debt. 15 U.S.C. § 1692e (emphasis added). The "broad scope" of this language is big enough to include false or deceptive indirect communications.

Second, this Court interprets a general statutory term "in light of the specific terms that surround it." Snapp v. Unlimited Concepts, Inc., 208 F.3d 928, 934 (11th Cir. 2000) (quotation marks omitted). That means we must interpret the words "any . . . representation or means" in light of other terms used in section 1692e. As the majority recognizes, see Maj. Op. at 10, other subsections of section 1692e list communications as specific examples of "representation[s] or means." See, e.g., 15 U.S.C. § 1692e(8) (stating that it "is a violation of this section" to

15

"[c]ommunicat[e] or threaten[] to communicate to any person credit information which is known or which should be known to be false"). And we know the FDCPA defines those specific examples of communications to include indirect communications. See id. § 1692a(2). For this reason as well, I think the better course is to interpret "any . . . representation or means" to include indirect communications.

Finally, this Court's decision in Bishop v. Ross Earle & Bonan, P.A., 817 F.3d 1268 (11th Cir. 2016), demonstrates that an action under section 1692e can be based on an indirect communication. Connie Bishop's debt collectors sent a debt-collection letter to her attorney, and Ms. Bishop sued those debt collectors under the FDCPA, alleging that the letter violated section 1692g and section 1692e. Id. at 1269–70. This Court first held that the letter was an indirect communication for purposes of the section 1692g claim. Id. at 1272. Then it held that, based on the letter sent to her attorney, Ms. Bishop alleged sufficient facts to state a claim under section 1692e. Id. at 1274. I say this shows that section 1692e prohibits false or deceptive indirect communications, like the letter in Bishop and like the statements posted on Midland Credit's website about Mr. Rivas's account. True, Ms. Bishop also alleged that the letter specifically violated section 1692e(10). Id. at 1270. But this Court couched its analysis in terms of section 1692e's general language, indicating that a false or deceptive indirect communication is prohibited by section

16

1692e's broad limits on false or deceptive "behavior." Id. at 1274. Beyond that, even to the extent the Bishop opinion relied on section 1692e(10) itself, that specific provision also lacks the term "communication." See 15 U.S.C. § 1692e(10). This must mean that a claim brought under section 1692e, with or without a specific reference to a subsection, can be asserted based on indirect communications, even if the subsection of the statute does not use the word "communication."

The majority attempts to distinguish Bishop because Ms. Bishop also asserted a claim under 15 U.S.C. § 1692g, which is not at issue here. Maj. Op. at 10–11 & n.1. Specifically, the majority says "our reasoning in Bishop does not apply" based on its reading that Bishop says the indirect communication was only "actionable" under section 1692e because the debt-collection letter sent to Ms. Bishop's attorney also violated section 1692g, which uses the term "communication." Id. at 11 n.1. But our Court's ruling in Bishop nowhere relied on section 1692g's use of the term "communication" in its discussion of the section 1692e claim. Instead, this Court simply held that Ms. Bishop alleged sufficient facts to state a claim under section 1692e based on the letter to Bishop's attorney. See Bishop, 817 F.3d at 1274. The majority does not dispute that the letter was an indirect communication.

17

I read section 1692e's broad prohibition on "any false, deceptive, or misleading representation or means in connection with the collection of any debt" to include indirect communications. I would therefore allow Mr. Rivas to proceed against Midland Funding under section 1692e for indirect communications. And viewing the record in the light most favorable to Mr. Rivas, a jury could find that Midland Funding indirectly communicated with Mr. Rivas through Midland Credit's website. Specifically, reasonable jurors could find that Mr. Rivas's settlement agreement with Midland Funding required him to use Midland Credit's website, such that any representations on the website were indirect communications from Midland Funding. Of course, Midland Funding tells us that Mr. Rivas was "not <u>required</u> to make payments online," since the settlement agreement says elsewhere that Rivas "may make payments online." But this sounds to me like a jury argument over a genuine dispute of material fact.

I would reverse the District Court's order granting summary judgment in favor of Midland Funding, and so I respectfully dissent.

18