[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-10750
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 26, 2010
JOHN LEY
CLERK

D.C. Docket No. 3:09-cv-00344-WS-MD

R. E. BANKSTON,
Firearms Retailer Buck and
Bass Sporting Goods,

Plaintiff-Appellant,

versus

COLLEEN M. THEN,
Director of Industry Operations Tampa Field
Division Bureau of Alcohol Tobacco Firearms and Explosive,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(August 26, 2010)

Before TJOFLAT, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Federal law requires a licensed firearms dealer to conduct a criminal background check prior to the transfer of any firearm. 18 U.S.C. § 922(t)(1). Under § 922(t)(5),

> If the licensee knowingly transfers a firearm to such other person and knowingly fails to comply with paragraph (1) of this subsection . . . and, at the time such other person most recently proposed the transfer, the national instant criminal background check system was operating and information was available to the system demonstrating that receipt of a firearm by such other person would violate subsection (g) or (n) of this section . . . the Attorney General may, after notice and opportunity for a hearing . . . impose on the licensee a civil fine of not more than $5,000.

18 U.S.C. § 922(t)(5).[1] In this appeal, we are asked to determine whether § 922(t) dictates that the licensee is prohibited from transferring a firearm if the background check produces inaccurate information and the buyer is not actually forbidden from purchasing the firearm. We must also determine the level of mental culpability required to violate the statute. We conclude that the accuracy of the information at the time of the check is irrelevant for purposes of this statute, and that the government need only prove the licensee acted knowingly. We

---

[1]Subsection (g) prohibits the possession of a firearm by, among others, anyone convicted of a crime for which the punishment exceeds one year imprisonment. Subsection (n) prohibits firearm possession by anyone under indictment for an offense punishable by more than one year imprisonment. 18 U.S.C. § 922(g), (n).

2

therefore affirm the district court's summary judgment order.

R. E. Bankston was the sole proprietor of Buck and Bass Sporting Goods, a licensed firearms dealer. In 2006, the Bureau of Alcohol, Tobacco, and Firearms (ATF) inspected the shop and discovered five violations of federal firearms laws, including the failure to conduct background checks. Bankston was notified of the violations and received a warning conference, after which he assured ATF investigators that he would follow proper procedures in the future.

In 2008, ATF Industry Operations Investigator James Hithcock conducted another inspection of Buck and Bass, finding four violations in which Bankston had transferred a firearm without first conducting the required background check through the Florida Department of Law Enforcement (FDLE). In particular, Bankston transferred a firearm to James Brooks on August 23, 2007, but the FDLE check was not performed until September 1, 2007. When he conducted the check, Bankston learned that Brooks was not approved to purchase a firearm.

The ATF issued Bankston a notice of imposition of a fine in connection with the transfer to Brooks. At a subsequent hearing, Hithcock testified that Bankston admitted knowing he was required to conduct the background check before he transferred the firearm. Hithcock confirmed that the FDLE site was operational on August 23, 2007, and that FDLE had confirmed that Bankston

3

would have received a non-approval had he conducted the check that day.

Hithcock could not disclose what criminal history rendered Brooks ineligible; he could only confirm that it involved a federal charge.

In his own testimony, Bankston admitted that he knew he was required to perform the check but stated that the failure to do so in this case was a mistake. He stated that he did not do it knowingly. He explained that when he learned Brooks was not approved, he called Brooks and retrieved the gun.

The hearing officer concluded that the government had established the elements of § 922(t)(5) and that Bankston had violated the federal firearm requirements. Thereafter, the ATF imposed the $5,000 fine. Bankston then filed this petition for review under 18 U.S.C. § 923(f)(3), arguing that the information in the system was incorrect because Brooks was not prohibited from owning a firearm. He submitted copies of Brooks's criminal record, which showed that Brooks had been convicted in 1971 of three misdemeanor federal offenses under 42 U.S.C. § 408(e).[2]

The district court granted the government's motion for summary judgment,

---

[2] In 1971, when Brooks was convicted, 42 U.S.C. § 408(e) provided that anyone who made an application for payment for the benefit and use of another and then knowingly and willfully converted the payment for another use was guilty of a misdemeanor. 42 U.S.C. § 408(e) (1958); Pub. L. 85-840, 72 Stat. 1013, 1035 (Aug. 28, 1958). In 1981, Congress amended the statute, making any violation a felony. Pub. L. 97-123, 95 Stat. 1659, 1664 (Dec. 29, 1981). Subsection (e) is currently codified at 42 U.S.C. § 408(a)(5) (2004).

concluding that the statutory language did not require the information available through the background check to be accurate and that Bankston had acted knowingly. Bankston now appeals challenging the district court's conclusions that (1) the information in the background check did not have to be accurate, and (2) the government could, and did, prove that he had acted knowingly.[3] We address each issue in turn.

A. Accuracy of Information

Bankston argues that § 922(t)(5) prohibits the sale of a firearm to a transferee only if the receipt of that firearm by the transferee would actually violate § 922(g) or (n). Thus, if the information in the background check was not accurate, the transfer would not be illegal.

We review questions of statutory interpretation *de novo*. *Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir. 2009). "'The starting point in statutory interpretation is the language of the statute itself.'" *Id.* (quoting *Ardestani v. INS*, 502 U.S. 129, 135 (1991)). "If the 'language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case,' and 'the statutory scheme is coherent and consistent,' the inquiry is over." *Id.* (quoting *Robinson v.*

---

[3] We review a district court's grant of summary judgment *de novo*, viewing all facts in the light most favorable to the non-moving party. *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 415 F.3d 1274, 1276 (11th Cir. 2005).

*Shell Oil Co.*, 519 U.S. 337, 340 (1997)).  "In determining whether a statute is plain or ambiguous, we consider 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Id.*

Bankston's argument focuses on the language, "*information was available to the system demonstrating that receipt of a firearm by such other person would violate subsection (g) or (n) of this section.*"  (emphasis added).  He contends that the statute must be interpreted to mean that *accurate* information was available.

The plain language of the statute, however, includes no such modifier.  Moreover, the statute uses the term "at the time," indicating that it would not be relevant if the information later turned out to be incorrect.  The focus is on the information available when the dealer conducts the background check.  Here, had Bankston conducted the check at the time of transfer, he would have received a non-approval.  The fact that Brooks could later show he was eligible to own the gun does not change the information available at the time of the transfer.

We find support for this interpretation in Congress's decision to give purchasers, but not dealers, the ability to challenge non-approval status.  *See* 28 C.F.R. § 25.10.  This makes sense: because a dealer is never told the reason for the non-approval, only the individual purchaser would know his criminal history and be able to challenge his status.

We therefore conclude that the information transmitted during a background check need not be accurate at the time of the check to prohibit the firearm transfer.

B. Whether the Licensee Must Act Knowingly

Bankston next argues that the government had to prove his culpability by showing he acted wilfully rather than knowingly. Alternatively, he contends that the government did not prove he knowingly failed to conduct the background check. He further asserts that he cannot be held vicariously liable for his employee's failure to conduct the check.

We disagree. First, other sections of the Gun Control Act use the term "willful" or "willfully." *See* 18 U.S.C. § 923(d)(1)(C), (D). But Congress chose to use "knowingly" in § 922(t)(5). This distinction indicates that Congress did not intend the standard for § 922(t)(5) to be willfulness. *See Duncan v. Walker*, 533 U.S. 167, 173 (2001) ("It is well settled that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)); *DIRECTV, Inc. v. Brown*, 371 F.3d 814, 818 (11th Cir. 2004) ("As we have previously stated, when Congress uses different language in similar sections, it intends different meanings." (internal quotation marks omitted)). Moreover, we will presume that

7

Congress said what it meant. *In re Hendrick*, 524 F.3d 1175, 1186-87 (11th Cir. 2008); *Kehoe v. Fid. Federal Banks & Trust*, 421 F.3d 1209, 1216 (11th Cir. 2005).

We further conclude that there was sufficient evidence to show Bankston acted knowingly. "Knowingly" is defined as "having an awareness or understanding; deliberate; conscious." *Black's Law Dictionary*, 7th Ed. (1999). Here, Bankston testified that he was aware of the background check requirements, had been counseled about the requirements previously, and had educated his staff about the requirements. Although Bankston testified that he did not knowingly ignore the requirements, he admitted that he was aware that he was required to perform the checks before transferring a firearm. He also admitted that he had signed off on the transfer to Brooks even though the check had not been done. This was sufficient to establish that Bankston knowingly violated the law.

Moreover, contrary to Bankston's arguments, Bankston was liable for the acts of his employees. "Pure vicarious liability, such as respondeat superior liability, attributes liability to one party based on the actions of the other party regardless of any allegation of culpability on the party held vicariously liable." *Laperriere v. Vesta Ins. Group, Inc.*, 526 F.3d 715, 722 (11th Cir. 2008). An employee's knowledge can be imputed to the employer "when the employee acts

for the benefit of the [employer] and within the scope of his employment." *Grand Union Co. v. United States*, 696 F.2d 888, 891 (11th Cir. 1983) (discussing theory of vicarious liability in False Claims Act case in which supermarket cashiers allowed customers to buy ineligible items with food stamps).  Here, the employee who actually sold the gun to Brooks was working within the scope of his employment and for Bankston's benefit.  Bankston was the sole proprietor of the gun shop and thus was responsible for the acts of his employees.

For the foregoing reasons, we AFFIRM the district court's order.

**AFFIRMED.**