**Ronnie E. DICKENS, On Behalf Of Himself And Others Similarly Situated, Plaintiff-Appellant,**

v.

**GC SERVICES LIMITED PARTNERSHIP, Defendant-Appellee.**

No. 16-17168
Non-Argument Calendar

United States Court of Appeals, Eleventh Circuit.

(August 23, 2017)

Aaron D. Radbil, Greenwald Davidson Radbil PLLC, Austin, TX, James L. Davidson, Michael L. Greenwald, Greenwald Davidson Radbil PLLC, Boca Raton, FL, for Plaintiff-Appellant

William S. Helfand, Lewis Brisbois Bisgaard & Smith, LLP, Houston, TX, Joelle C. Sharman, Lewis Brisbois Bisgaard & Smith, LLP, Atlanta, GA, Michael Shelby Sperounes, Lewis Brisbois Bisgaard & Smith, Tampa, FL, for Defendant-Appellee

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Ronnie Dickens appeals the district court's denial of class certification, as well as its determination that he was entitled to one dollar in statutory damages, on his Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), claim against GC Services Limited Partnership. Dickens argues that the district court erroneously deprived him of a jury trial on statutory damages. He further argues that the district court abused its discretion by determining that he was an inadequate class representative and that a class action was not the superior method of adjudicating the putative class's claims. We agree and therefore vacate the district court's damages determination and denial of class certification and remand for proceedings consistent with this opinion.

## I. BACKGROUND

GC Services mailed a letter to Dickens seeking to collect a debt on behalf of Synchrony Bank:

> As of the date of this letter, our records show you owe a balance of $7,573.00 to Synchrony Bank. If you dispute this balance or the validity of this debt, please contact us. If you do not dispute this debt within 30 days after you receive this letter, we will assume this debt is valid.
>
> However, if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you. Or, if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank.

Collection Letter, Doc. 1-1 at 2.[1]

Dickens filed suit against GC Services alleging that the letter failed to comply with the FDCPA. Specifically, Dickens alleged that the letter violated 15 U.S.C. § 1692g(a)(4), which requires debt collectors to provide consumers with "a statement that if the consumer notifies the debt collector in writing within [a] thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer." The provision also requires debt collectors to mail

---

1. Citations to "Doc. ___" refer to numbered docket entries in the district court record in this case.

a copy of the verification to the consumer after receiving a written dispute. 15 U.S.C. § 1692g(a)(4). According to Dickens, the letter failed to inform him that he had to dispute the putative debt *in writing* to trigger GC Services' verification obligation. The complaint also alleged that the letter failed to comply with 15 U.S.C. § 1692g(a)(5), which requires debt collectors to provide consumers with "a statement that, upon the consumer's written request within [a] thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." Once more, Dickens alleged that the letter failed to inform him that he was required to submit a request in writing to trigger GC Services' duty to inform him of the original creditor. The complaint further alleged that these violations rendered the letter "false, deceptive, or misleading" in violation of 15 U.S.C. § 1692e.

Dickens sought to represent a class under Federal Rules of Civil Procedure 23(a) and (b)(3). The putative class consisted of:

> (a) All persons with a Florida address, (b) to whom GC Services Limited Partnership mailed an initial debt collection communication that stated: (1) "if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you," and/or (2) "if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client," (c) in the one year preceding the date of this complaint, (d) in connection with the collection of a consumer debt.

Compl., Doc. 1 at 7. Notably, the complaint sought only statutory damages. The complaint demanded a jury trial.

Dickens moved for class certification under Federal Rules of Civil Procedure 23(a) and (b)(3), as well as for summary judgment on GC Services' liability. The motion for class certification attached one of GC Services' interrogatory responses, which indicated that GC Services sent 9,862 letters to Florida consumers containing the offending language. In its response to the class certification motion, GC Services attached the declaration of Mark Schordock, GC Services' Executive Vice President of Operations. According to Schordock, GC Services declined to specify in its standard collection letter that a consumer's debt dispute must be in writing because it was GC Services' policy "to obtain and provide a consumer verification of a debt, or a copy of a judgment against the consumer, and mail a copy of such verification or judgment to the consumer, even if the consumer . . . contacts GC Services by . . . non-written means, to dispute the debt." Schordock Decl., Doc. 28-1 at 1-2. Likewise, Schordock explained that the letters failed to specify that a consumer must ask for the name of the original creditor in writing because it was GC Services' policy to provide that information even if the consumer requested it by non-written means. GC Services' standard operating procedures manual was consistent with Schordock's declaration.

The district court *sua sponte* ordered the parties to submit briefing on the extent of the putative class's damages. The court explained that the extent of damages was crucial to the class certification inquiry, as it would help the court determine whether a class action was the most economical vehicle to adjudicate the putative class members' claims. After briefing, but before discovery was completed, the court granted Dickens's motion for summary judgment as to GC Services' liability, but denied the motion for class certification. Although no motion for summary judg-

ment had been filed as to damages and no trial on statutory damages had been conducted, the district court also assessed Dickens's individual entitlement to statutory damages. The district court weighed the factors identified in 15 U.S.C. § 1692k(b)(1) and entered judgment for Dickens in the amount of one dollar.

In denying the class certification motion, the district court determined that the case satisfied three of the four Rule 23(a) prerequisites for class certification: numerosity, commonality, and typicality. The court concluded, however, that Dickens failed to meet Rule 23(a)'s adequacy requirement, because he sought only statutory—and not actual—damages, while some class members may have suffered actual damages. The court ruled that the possibility of actual damages defeated adequacy notwithstanding its finding that GC Services' FDCPA violations were likely "benign in ... effect" and "had the ... practical effect ... to save debtors time and trouble when disputing their debts." D. Ct. Order, Doc. 47 at 18-19. The district court further noted that it had "grave doubts that [GC Services' violations] adversely affected" the putative class members. *Id.* at 19 (emphasis omitted).

The district court further concluded that Dickens failed to satisfy Rule 23(b)(3)'s superiority requirement because the cost of administering a class action would likely dwarf the nominal statutory damages to which the class would be entitled. The court therefore denied Dickens's motion for class certification and entered judgment in his favor in the amount of one dollar. Dickens now appeals the district court's determination of his statutory damages and its denial of his motion for class certification.

## II.  STANDARD OF REVIEW

We review questions of statutory interpretation *de novo. Bankston v. Then,* 615 F.3d 1364, 1367 (11th Cir. 2010). We also review a district court's grant of summary judgment *de novo,* applying the same legal standards as the district court. *Galvez v. Bruce,* 552 F.3d 1238, 1241 (11th Cir. 2008). We view the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in favor of the party opposing summary judgment. *See id.; Whatley v. CNA Ins. Cos.,* 189 F.3d 1310, 1313 (11th Cir. 1999).

We review the district court's denial of class certification for an abuse of discretion. *Little v. T-Mobile USA, Inc.,* 691 F.3d 1302, 1305 (11th Cir. 2012). A district court abuses its discretion if it employs an incorrect legal standard, follows improper procedures, makes clearly erroneous findings of fact, or applies the law in an unreasonable or incorrect manner. *Id.*

## III.  DISCUSSION

### A.  The District Court's Determination of Dickens's Statutory Damages

Dickens argues that the district court erred in determining *sua sponte* the amount of statutory damages to which he was entitled. In Dickens's view, the FDCPA requires the question of statutory damages to be submitted to a jury. We agree. In *Sibley v. Fulton DeKalb Collection Serv.,* 677 F.2d 830 (11th Cir. 1982), we determined that the FDCPA's "allowance of damages ... must be construed to embody the right of trial by jury." *Id.* at 834. We did not distinguish actual damages from statutory damages, concluding that "a party upon timely demand is entitled to a jury trial in an action for *damages* under the [FDCPA]." *Id.* at 831-32 (emphasis added). As the Seventh Circuit noted, reviewing *Sibley,* we did not "bifurcate the proceeding, submitting actual damages to the jury and reserving the statutory dam-

age issue for the judge," even though the plaintiffs in *Sibley* sought both statutory and actual damages. *Kobs v. Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 897 (7th Cir. 1998); *see also Sibley*, 677 F.2d at 831, 834. Our language and prescribed remedy in *Sibley* therefore "indicat[e] that a party is entitled to a jury trial for *all* damages under the FDCPA—statutory or actual." *Kobs*, 134 F.3d at 897.

In this case, though, the district court usurped the role of the jury by determining on its own the amount of statutory damages to which Dickens was entitled. It does not appear that the district court applied the summary judgment standard in determining statutory damages. No party moved for summary judgment on damages. The court did not apprise the parties that it was considering summary judgment on damages. Indeed, in his brief in response to the court's order asking the parties to brief the impact of their respective damages assessments on the class certification inquiry, Dickens objected that discovery was not yet complete and that it would be premature for the court to make a finding on damages because FDCPA plaintiffs have the right to a jury trial on damages. Although the parties submitted *some* evidence regarding damages, it is far from clear that the parties were instructed to submit *all* evidence relevant to the amount of Dickens's statutory damages such that the court could determine whether there remained a genuine issue of material fact. Instead, without appropriate notice to the parties, the opportunity to complete discovery, or full evidentiary submissions, the district court determined the amount of Dickens's statutory damages "in its discretion," concluding that an award of one dollar was "appropriate in this case." D. Ct. Order, Doc. 47 at 21-22.

The district court applied the factors identified in 15 U.S.C. § 1692k(b) for de-termining statutory damages, including "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). Citing Schordock's declaration, the district court concluded that GC Services' noncompliance with the FDCPA was unintentional and benevolent. But without full discovery, Dickens was deprived of the opportunity to develop evidence regarding these factors or to challenge Schordock's declaration. This was error.

## B. Class Certification

Next, Dickens argues that the district court erred in denying his motion for class certification. Federal Rule of Civil Procedure 23(a) requires putative class plaintiff to satisfy four criteria before a class may be certified: numerosity, commonality, typicality, and adequacy. Once these criteria are met, the plaintiff must meet one of the three tests established by Rule 23(b). In this case, Dickens sought to certify a Rule 23(b)(3) class, which required him to show that questions of law or fact common to class members predominate over individual issues and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Dickens challenges the district court's determination that he was an inadequate class representative and that a class action was not the superior method of adjudicating the dispute.

Before assessing Dickens's arguments, we pause to recount the district court's class action analysis. The court granted summary judgment to Dickens on liability based on our decision in *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268 (11th Cir. 2016), in which we held that a debt collector's communication violates the FDCPA's "in writing" requirement even if

the debt collector professes willingness to meet its FDCPA obligations notwithstanding the fact that the consumer's requests were not made in writing. 817 F.3d at 1273-74; *see also id.* at 1277 (holding that letters omitting the "in writing" language may be "false, deceptive, or misleading," as they "misstate[ ] the law, omit[ ] a material term required by [the FDCPA], and misrepresent[ ] consumer rights under the FDCPA"). At the same time, the district court had "grave doubts" that any putative class member was injured by GC Services' failure to meet the in-writing requirement, noting that GC Services' FDCPA violations were likely "benign in . . . effect" and "had the . . . practical effect . . . to save debtors time and trouble when disputing their debts." D. Ct. Order, Doc. 47 at 18-19. As a result, the district court concluded that the putative class members would likely be awarded one dollar each in statutory damages. In the district court's view, it was likely the case that (1) all 9,862 putative class members who received letters omitting the "in-writing" language had a legal claim identical to Dickens's, and (2) most—if not all—class members could claim only statutory and not actual damages. Consequently, the overwhelming majority of the class—including Dickens—likely had identical legal claims for which they could receive identical damages. With this background, we assess the district court's denial of class certification.

### 1. Adequacy

■ Federal Rule of Civil Procedure 24(a)(4) requires a plaintiff to show that the proposed class representative "will fairly and adequately protect the interests of the class." Adequacy analysis requires two inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class[,] and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (internal quotation marks omitted). The district court determined that Dickens would adequately prosecute the action, but it concluded that he was an inadequate class representative because there was a substantial conflict of interest between Dickens and the class: Dickens sought only statutory damages, while other members of the class might have suffered actual damages.

The district court abused its discretion in concluding that Dickens was an inadequate class representative. As an initial matter, the district court's stated reason for finding Dickens inadequate—that he sought only statutory damages—created no substantial conflict of interest. "[T]he existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *Id.* at 1189. Here, the district court made a determination—based on the text of the offending language, Schordock's declaration, and GC Services' standard operating procedures—that the putative class members were unlikely to have suffered actual damages, explaining that the court had "grave doubts" that anyone was injured by GC Services' failure to meet the "in writing" requirement. D. Ct. Order, Doc. 47 at 18-19. Yet the court used what it considered to be a remote possibility of actual damages to deem Dickens an inadequate representative.

In doing so, the district court relied on our decision in *Cooper v. Southern Co.*, 390 F.3d 695, 721 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006), which held that there is a conflict between the named plaintiff and absent class members where the class representative seeks only a form of relief that might not be of the utmost impor-

tance to absent class members. *Cooper* was a putative race discrimination class action where the plaintiffs sought, in part, to certify a Rule 23(b)(2) class seeking only injunctive relief. We determined that the proposed class representatives were inadequate in part because there was no indication that absent class members "were willing to forego class certification on damages in order to pursue injunctive relief that consisted of an admonition to follow general principles of settled law." *Id. Cooper* rested on the court's observation that "to many of the class members (and especially to those who no longer work for the defendants), the monetary damages requested might be of far greater significance than injunctive relief, stated at a high order of abstraction, that simply directs the defendants not to discriminate." *Id.*

Here, by contrast, the district court concluded that absent class members likely suffered only statutory and no actual damages, yet it used the remote possibility that some class members may have suffered actual damages as a reason to deem Dickens inadequate nonetheless. In essence, the district court concluded that where the proposed class representative fails to seek every remedy that *possibly*— as opposed to probably—would be sought by absent class members, the representative is inadequate. That proposition contradicts our admonition that minor conflicts alone are insufficient to deem a representative inadequate. *See Valley Drug*, 350 F.3d at 1189. Indeed, any conflict between Dickens and class members who have suffered actual damages is especially minimal

given that in the rare circumstance in which a class member suffered actual damages, the class member could simply opt out of the class and pursue litigation on his own. *See* Fed. R. Civ. P. 23(c)(2)(B)(v).[2]

Alternatively, GC Services argues that Dickens was an inadequate representative because class members likely benefitted from the conduct Dickens says harmed him. In GC Services' view, some consumers benefitted from its policy by disputing their debts via more convenient non-written means. Hypothetically, this argument finds support in our law: "A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class." *Valley Drug*, 350 F.3d at 1189. But there are two problems with GC Services' argument. First, at this stage, the record contains no evidence that any consumer actually benefitted from its purportedly more permissive policy. Second, and more importantly, while some consumers *may* have benefitted from GC Services' lenient policy, no consumer could have benefitted from its FDCPA violation. To illustrate, GC Services could have sent consumers a letter that both informed them of the "in writing" requirement *and* indicated that GC Services would honor disputes or requests made via any reasonable means. Although some consumers may have benefitted from GC Services' decision to include the latter language, it is hard to envision that any consumer benefitted from GC Services' failure to mention the "in writing" requirement, which could

**2.** The district court recognized that Rule 23's opt-out provision should have allayed its concerns about any class members who may have suffered actual damages, but nonetheless chose not assign any significance to the opt-out rule. The court did so because it concluded that the opt-out rule is uneconomical, as individuals who fail to timely opt out often improperly file subsequent individual suits

that are barred by res judicata. Maybe so. But unintended consequences of Rule 23 are irrelevant to the adequacy of the class representative; the fact that anomalous class members who may have suffered actual damages have the opportunity to pursue separate litigation suggests that Dickens—whose damages likely match the overwhelming majority of the class—is an adequate representative.

have led consumers to unwittingly waive their rights. *Bishop,* 817 F.3d at 1274 ("The consumer has a right to verification only if she disputes the debt in writing."). If consumers benefitted from GC Services' letters, it was for reasons other than the FDCPA violation at issue.

Given its determination that Dickens would adequately prosecute the action, the district court abused its discretion in concluding that Dickens was an inadequate representative in the absence of a significant conflict of interest between Dickens and the class.

### 2. Superiority

Assuming the Rule 23(a) criteria are met, a district court may certify a class under Rule 23(b)(3) if "questions of law or fact common to class members predominate" over individual questions and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) further identifies four factors pertinent to the predominance and superiority inquiries:

> (A) the class members' interests in individually controlling the prosecution . . . of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

▮ In this case, the district court relied on two factors, neither of which constituted a sound basis for denying class certification. First, the district court explained that class members have an interest in controlling the prosecution of their own actions because it is possible that they were adversely affected by the FDCPA violation, and the complaint in this case seeks only statutory damages. But as we previously noted, this possibility runs counter to the district court's own determination that the likelihood of actual damages was remote. Indeed, the district court conducted its Rule 23(b)(3)(A) analysis "assuming [it was] wrong about its assessment of the adversity caused by [GC Services'] noncompliance." D. Ct. Order, Doc. 47 at 20. The court thus weighed Rule 23(b)(3)(A) in GC Services' favor based on a remote possibility instead of concluding—based on its finding that actual damages were unlikely—that class members likely have little interest in prosecuting their own actions. This was an abuse of discretion. *See Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1327 (11th Cir. 2008) (concluding that a district court abused its discretion in determining individual actions were a superior adjudicative method where it was "highly unlikely" that plaintiffs would be subject to individualized defenses).

Second, the district court—which concluded that each putative class member would be entitled to only a dollar in statutory damages—determined that the value of the litigation was likely so low that it would be dwarfed by the cost of administering a class action. While an assessment of the cost and efficiency of a class action is important to the superiority inquiry, the district court applied the incorrect legal standard by considering the cost of a class action in a vacuum, as opposed to the cost compared to alternative adjudicative methods. Proper superiority analysis considers "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,*

601 F.3d 1159, 1184 (11th Cir. 2010). Many courts comparing class actions to other adjudicative methods in FDCPA cases have concluded that "class actions are a more efficient and consistent means of trying the legality of collection letters." *Abels v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005); *see also Jones v. Advanced Bureau of Collections LLP*, 317 F.R.D. 284, 294 (M.D. Ga. 2016) (holding that a class action was the superior method of evaluating putative class's claims that collection letters failed to comply with the FDCPA's in-writing requirement because "separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts" (internal quotation marks omitted)); *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 700-01 (M.D. Fla. 2000) (holding that a class action is the superior adjudicative method where the defendant's collection letters were "[t]he essential common factual link between . . . the prospective class members"). Here, however, the district court failed to compare the cost of a class action with the cost of individual actions or any other alternatives to class adjudication.

What is more, the district court failed to give due weight to—or, for that matter, meaningfully consider—the ways in which the high likelihood of a low per-class-member recovery militates in favor of class adjudication. As we have previously explained:

> [C]lass actions often involve an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit. The plaintiff's claim may be so small, or the plaintiff so unfamiliar with the law, that he would not file suit individually. This consideration supports class certification in cases where the total amount sought by each individual plaintiff is small in absolute terms. It also applies in situations where, as here, the amounts in controversy would make it unlikely that most of the plaintiffs, or attorneys working on a contingency fee basis, would be willing to pursue the claims individually. This is especially true when the defendants are corporate behemoths with a demonstrated willingness and proclivity for drawing out legal proceedings for as long as humanly possible and burying their opponents in paperwork and filings.

*Klay v. Humana, Inc.*, 382 F.3d 1241, 1270-71 (11th Cir. 2004) (internal quotation marks and citations omitted), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008).[3] Moreover, absent class adjudication, defendants in cases where individual damages are low would be able to break the law with impunity, as most victims "would be without effective strength to bring their opponents into court at all." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The district court failed to take these considerations into account in assessing supe-

---

**3.** It is true that if putative class members each filed separate lawsuits under the FDCPA, they could each receive up to $1,000 in statutory damages and that by filing as a class, the maximum each class member can receive is much lower because class damages are limited to $500,000 in the aggregate. 15 U.S.C. § 1692k(a)(2)(B). In a vacuum, this weighs against a class action's superiority as an adju-

dicative mechanism. But given the low dollar amounts at stake regardless of whether putative class members file individually or as a class, the district court must consider the disparity in available damages in light of our concerns in *Klay*, including the "unlikel[ihood] that most of the plaintiffs . . . would be willing to pursue the claims individually." 382 F.3d at 1271.

riority.[4]

In short, the district court relied exclusively on irrelevant or unimportant factors—the remote possibility of actual damages and its speculation regarding the cost of administering a class action in a vacuum—while failing to appropriately assess the import of its finding that class members will likely be entitled only to nominal statutory damages. We therefore vacate the district court's denial of class certification and remand this case to the district court for a new class certification determination employing the proper legal standards and considering the factors we have identified here.

## IV. CONCLUSION

We vacate the district court's award of nominal damages to Dickens and its denial of class certification and remand for proceedings consistent with this opinion.

**VACATED AND REMANDED.**

---

4. GC Services argues that the district court properly considered likely class damages, citing to our decision in *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003). But in *London*, we merely explained that a district court may consider the possibility that a potential class award will be grossly disproportionate to the defendant's misconduct in assessing superiority. The district court made no such determination; it merely speculated that the cost of administering a class action would be too high to justify certification. On remand, the district court may consider the possibility of disproportionately harsh class damages as part of the superiority inquiry. *See id.* at 1255 n.5; *Klay*, 382 F.3d at 1271-72. But it must do so in light of its determination that each class member will likely be entitled to only a nominal recovery. *See Klay*, 382 F.3d at 1271-72 (explaining that our concern with disproportionate damages is in part allayed where the statute in question "does not guarantee a fixed amount of damages regardless of the gravity of the defendants' behavior").